

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| TUKUA INVESTMENTS, LLC AND ROMELIA MONDRAGON, | § | No. 08-11-00014-CV |
| Appellants, | § | Appeal from the |
| v. | § | 96th District Court |
| SKIP SPENST, SANDRA SPENST, AND VIRGINA ZAIGER, INDIVIDUALLY AND AS REPRESENTATIVE OF THE ESTATE OF JOHN ZAIGER, DECEASED, | § | of Tarrant County, Texas |
| | § | (TC#096-235540-09) |
| Appellees. | | |

## **O P I N I O N**

Appellants, Tukua Investments, LLC and Romelia Mondragon, were sued by Appellees for statutory fraud and negligent misrepresentation in connection with a proposed sale of commercial property. The trial court entered judgment in favor of Appellees based upon a favorable jury verdict on their claims. Appellants challenge the trial court's final judgment and urge that this Court reverse the judgment and render a take-nothing judgment in their favor or in the alternative, that we grant a new trial and remand to a different county for retrial. Appellants raise nine issues on appeal. For the following reasons, we reverse and render judgment that Appellees take nothing on their claims for statutory fraud and negligent misrepresentation.

## BACKGROUND

Appellant, Romelia Mondragon is the president of Appellant, Tukua Investments, LLC.

On May 21, 2007, Tukua entered into a commercial listing agreement with Century 21 Charlotte Banks Realty, to sell Tukua's commercial property located at 3039 Megan Street in Eagle Pass, Maverick County, Texas. Randall Banks, Tukua's real estate agent, advertised the property on the Internet as a commercial property with a triple-net lease with lease payments to begin with the facility being licensed as a nursing and rehabilitation center.[1] The sales price for the property was listed at $2.75 million.

On August 12, 2007, Dorine Hubbard, working on behalf of Appellees, requested more information on the Megan Street property as Appellees were looking for a 1031 exchange property.[2] On August 13, 2007, Mr. Banks emailed Ms. Hubbard a copy of the commercial lease and informed her that Appellants estimated that the facility would be licensed as a nursing home within thirty days. On August 14, 2007, Appellees made an offer to buy on the condition that the close date be consecutive with the commencement of lease payments by Signature Healthcare. At trial, Ms. Hubbard testified that Appellees made an offer of $2.5 million, but the offer was rejected. She testified that according to Mr. Banks' explanation the offer was rejected because the sellers wanted to reap the benefits on the development and sale of the commercial property while the buyers would reap the benefits of the lease. The parties ultimately agreed on a sales price of $2.6 million. On August 16, 2007, Ms. Hubbard forwarded a sales contract to Mr. Banks. The contract was signed and initialed by John Zaiger on behalf of "John Zaiger, et. al." Mr. Zaiger visited the Megan Street property on August 28, 2007, where he observed Signature Healthcare's furniture and equipment in the building and thought the place looked

---

[1] Tukua and Signature Healthcare Services executed a 10-year commercial lease on or around June 1, 2006, which stated that upon substantial completion of the building rent would be $25,000, but until then and in no event longer than one year from the date the contract was executed rent would be $100. Substantial completion of the building would occur when a certificate of occupancy was issued.

[2] Under Section 1031of the U.S. Internal Revenue Code, a seller of real property may avoid capital gains tax by exchanging the sold property for a property of "like-kind" within 180 days of the sale. *See* 26 U.S.C. § 1031.

2

outstanding and ready to go at that time.

Because Appellees had recently sold other real estate in California, they needed to identify a 1031 exchange property by October 1, 2007, and close on the sale by February 13, 2008, in order for the capital tax to be deferred under the 1031 exchange. However, the signing of the contract by Appellants was delayed, and in response to Ms. Hubbard's inquiries on behalf of her clients who wondered if they needed to pursue other properties to designate for the 1031 exchange, Mr. Banks informed her that Appellants had no problems with the terms of the contract, but did not feel comfortable signing until after September 1 due to accounting and tax issues, which were being addressed by Appellants' attorney. When the contract was not signed by September 1, in response to Ms. Hubbard's questioning, Mr. Banks informed her that Appellants had learned that the facility on the property had some issues under the Americans with Disabilities Act (ADA). Appellees agreed to defer signing, as they believed these to be solvable issues. Ms. Hubbard testified that Appellees entered into the contract knowing that Signature Healthcare was not paying on the triple-net lease at the time because of licensing, construction, and ADA issues. Appellants executed the sales contract on September 12, 2007.

Ms. Hubbard testified that she first learned of a problem with Signature Healthcare and the lease on October 12, 2007. On that day, Mr. Banks informed her that his clients told him that Signature Healthcare was not going to fulfill the lease. As the 1031 exchange designation deadline had already passed, Ms. Hubbard submitted a commercial contract amendment in order to protect Appellees. The amendment extended Appellees' right to terminate the contract to February 10, 2008, and provided time for Appellants to find a replacement tenant. When the Appellees inadvertently received a copy of a demand letter sent to Signature Healthcare referring to an August 8, 2007, eviction notice, Appellees became aware that a lease dispute between the

3

two entities existed prior to Appellees making an offer to buy the commercial property. At this time, Appellees withdrew from the contract, knowing they would not be able to designate and purchase a 1031 exchange property and were required to pay over $240,000 in taxes on the sale of their California property.

Appellees filed suit against Appellants in Tarrant County, alleging statutory fraud pursuant to Chapter 27 of the Texas Business Code and the tort of negligent misrepresentation. *See* TEX. BUS. & COM. CODE ANN. § 27.01 (West 2009). After trial, a jury found for Appellees on both causes of action. The trial court entered a final judgment on the jury's verdict, awarding over $1.3 million to Appellees. Appellants filed a motion for judgment notwithstanding the verdict (JNOV), a motion to disregard the jury's findings, and a motion for new trial. The trial court denied the motions by written orders. This appeal followed.

## DISCUSSION

## STANDING

In Issue One, Appellants complain that Appellees, Virginia Zaiger and Skip and Sandra Spenst ("the Spensts"), lack standing to file suit in this matter. Appellants also argue that the claims for statutory fraud and negligent misrepresentation do not survive the death of Mr. Zaiger and as such, suit cannot be brought on behalf of his estate.

On appeal, we review the issue of standing *de novo*. *Tex. Dep't of Transp. v. City of Sunset Valley*, 146 S.W.3d 637, 646 (Tex. 2004). Standing is a constitutional prerequisite to maintaining suit. *Id*.; *see Tex. Ass'n of Bus. v. Texas Air Control Bd.,* 852 S.W.2d 440, 444 (Tex. 1993). Standing is never presumed, nor can it be waived. *Texas Air Control Bd.*, 852 S.W.2d at 443-44. To have standing, a plaintiff must be personally aggrieved and the alleged injury suffered must be concrete and particularized, actual or imminent, not hypothetical.

4

*DaimlerChrysler Corp. v. Inman*, 252 S.W.3d 299, 304-05 (Tex. 2008). The general test for standing requires that there be a real controversy between the parties that can be determined by the judicial declaration sought. *Texas Air Control Bd.*, 852 S.W.2d at 446. In determining whether a plaintiff has standing, we construe the petition in favor of the plaintiff, and if necessary, review the entire record to determine if any evidence supports standing. *Id.*

Here, the real estate contract identifies the buyer as "John Zaiger, et. al.," and is signed and initialed by Mr. Zaiger using "John Zaiger, et. al." Appellants argue that Appellees, Virginia Zaiger and the Spensts, lack standing because they were not identified as buyers in the contract and were not signatories to the contract. Appellees argue that the evidence at trial established that Mr. Zaiger signed the contract in a representative capacity and that Appellants knew Mr. Zaiger was acting on behalf of all the buyers. Thus, in determining whether Virginia Zaiger and the Spensts have standing, we must first decide whether they were parties to the contract.

Traditionally, the presence or absence of signatures on a contract is relevant in determining whether the contract is binding on the parties. *In re Big 8 Food Stores, Ltd*., 166 S.W.3d 869, 876 (Tex. App. – El Paso 2005, orig. proceeding); *In re Bunzl USA, Inc*., 155 S.W.3d 202, 209 (Tex. App. – El Paso 2004, orig. proceeding). However, the absence of a party's signature does not necessarily destroy an otherwise valid contract. *Thomas J. Sibley, P.C. v. Brentwood Inv. Dev. Co. L.P.*, 356 S.W.3d 659, 663 (Tex. App. – El Paso 2011, pet. denied). When a contract is not signed by a party, other evidence may be used to establish the nonsignatory's unconditional assent to be bound by the contract. *In re Citgo Petroleum Corp*., 248 S.W.3d 769, 774 (Tex. App. – Beaumont 2008, orig. proceeding); *see also DeClaire v. G&B McIntosh Family Ltd. Partnership*, 260 S.W.3d 34, 44 (Tex. App. – Houston [1st Dist.] 2008, no

pet.) (nonsignatory may accept a contract signed by the other party by his acts, conduct, or acquiescence to the terms of the contract).

The evidence showed that both Appellants and Mr. Banks, Appellants' real estate agent, knew there was more than one buyer involved in the transaction. Moreover, the 1031 exchange paperwork expressly identifies John and Virginia Zaiger and Skip and Sandra Spenst as exchangers. The 1031 paperwork identifies the Eagle Pass property as the replacement property and reflects that a $25,000 earnest money deposit for the replacement property was made by the exchangers through their exchange account.

The real estate contract in issue identifies Tukua Investments, LLC, as the seller and John Zaiger, et. al., as the buyer. While there is nothing in the contract expressly identifying Appellees, Virginia Zaiger and the Spensts, as parties to the contract, Appellees point out that Mr. Zaiger signed the contract using "et. al." to indicate that he was signing the contract in a representative capacity. In the absence of a signature on a contract, we look to other evidence to establish whether the nonsignatory may be bound by the contract. *See In re Citgo Petroleum Corp.*, 248 S.W.3d at 774.

At trial, Ms. Hubbard testified that she was working for the Zaigers and the Spensts and was in communication with both Mr. Zaiger and Skip Spenst concerning the property at issue.[3] Romelia Mondragon acknowledged her signature on the contract and identified the contract that was signed by Mr. Zaiger, the representative of Appellees, Virginia Zaiger and the Spensts. Ms. Mondragon also testified that she knew Appellees were operating under a Section 1031 deadline. Additionally, Mondragon testified that on September 12, 2007, the day she signed the contract, Mr. Banks told her the buyers needed the contract.

---

[3] Ms. Hubbard also testified that she spoke more with Skip Spenst than Mr. Zaiger.

Appellee Skip Spenst testified that he had previously worked with Mr. Zaiger on 1031 exchanges and that they committed to the exchange involved in the present case.[4]  Mr. Spenst stated that they had entered into an agreement to buy property with a 10-year lease on it, and that he read the 10-year lease.

Appellee Virginia Zaiger testified that Mr. Zaiger, her husband, and Mr. Spenst invested in properties for retirement and that they handled the business transactions.   She testified that in this case, her husband had told her about the property and indicated to her that he had read the contract and the lease.   Mr. Zaiger was in constant communication with Mr. Spenst about this particular transaction.   She explained to the jury that her only involvement was to sign on the dotted line.   Although Virginia Zaiger and the Spensts did not personally sign the contract and are not individually identified in the contract, we conclude that the evidence establishes that Mr. Zaiger signed the contract on behalf of all Appellees and that all Appellees intended to be bound by the terms of the contract.   *See In re Citgo*, 248 S.W.3d at 774; *DeClaire*, 260 S.W.3d at 44. After construing the petition in favor of the plaintiffs and in reviewing the entire record to determine if any evidence supports standing, we find that Virginia Zaiger and the Spensts have standing to file suit.   *See Texas Air Control Bd.*, 852 S.W.2d at 446.   Because we find that the Appellees have standing, we need not address Appellants' survival of the claims argument.   *See* TEX. R. APP. P. 47.1.[5]   Issue One is overruled.

**MOTION TO TRANSFER VENUE**

In Issue Nine, Appellants complain that the trial court erred when it denied their motion

---

[4]  Mr. Spenst testified that in this case, he notified the exchanger that he had found a replacement property and that he filled out the 1031 exchange forms identifying the properties.
[5]  "The court of appeals must hand down a written opinion that is as brief as practicable but that addresses every issue raised and necessary to final disposition of the appeal."   TEX. R. APP. P. 47.1.

to transfer venue from Tarrant County to Maverick County. The trial court specifically and wholly denied Appellants' motion to transfer venue on the ground of convenience.

Section 15.002(c) of the Texas Civil Practice and Remedies Code does not permit as a ground for appeal a trial court's ruling or decision to grant or deny a motion to transfer venue on grounds of convenience. TEX. CIV. PRAC. & REM. CODE ANN. § 15.002(c) (West 2002). When a party moves to transfer venue upon both convenience and another venue ground, and the trial court's order denies a motion to transfer venue based solely upon the ground of convenience, the order is not reviewable on appeal. *Garza v. Garcia*, 137 S.W.3d 36, 39 (Tex. 2004); *Cunningham v. Zurich American Ins. Co.*, 352 S.W.3d 519, 535 (Tex. App. – Fort Worth 2011, pet. denied). Issue Nine is overruled.

## SECTION 27.01 CLAIMS

In Issue Two, Appellants argue that Appellees cannot recover for statutory fraud pursuant to Section 27.01 of the Texas Business and Commerce Code because there was never an actual conveyance of real property or, at the very least, because no contract existed between the parties as Appellees walked away from the transaction. We disagree. Appellants cite to several cases, which we find to be inapplicable or distinguishable from the instant case, because here the parties entered into a valid real estate contract. *See Stanfield v. O'Boyle*, 462 S.W.2d 270, 271 (Tex. 1971) (interpreting predecessor to section 27.01); *Burleson State Bank v. Plunkett,* 27 S.W.3d 605, 611 (Tex. App. – Waco 2000, pet. denied) (section 27.01 inapplicable to a construction loan transaction); *Nolan v. Bettis*, 577 S.W.2d 551, 556 (Tex. Civ. App. – Austin 1979, writ ref'd n.r.e.) (in action to cancel trustee's deed section 27.01 inapplicable because there was neither a contract nor the sale of land between the parties); *Windsor Village, Ltd. v. Stewart Title Ins. Co.*, No. 14-09-00721-CV, 2011 WL 61848, at *5 (Tex. App. – Houston [14th Dist.]

8

Jan. 6, 2011, no pet.) (case involved a contract for title insurance not real property); *Hansberger v. EMC Mortg. Corp.*, No. 04-08-00438-CV, 2009 WL 2264996, at \*4 (Tex. App. – San Antonio Jul. 29, 2009, pet. denied) (section 27.01 inapplicable because case involved contract for mortgage loan not a real estate contract); *Joseph v. James*, No. 03-07-00197-CV, 2009 WL 3682608, at \*5-6 (Tex. App. – Austin Nov. 6, 2009,  no pet.) (section 27.01 inapplicable because there was no enforceable contract where potential buyers never signed contract); *Evans v. Wilkins*, No. 14-00-00831-CV, 2001 WL 1340356, at \*4 (Tex. App. – Houston [14th Dist.] Nov. 1, 2001, no pet.) (claims involved memorandums of understanding and not independent contracts created for the conveyance of specific pieces of property).

Section 27.01(a) of the Texas Business and Commerce Code creates a statutory cause of action for fraud in a real estate transaction.  *See* TEX. BUS. & COM. CODE ANN. § 27.01(a) (West 2009).  Fraud in a real estate transaction occurs if: (1) a person makes a false representation of a past or existing material fact in a real estate transaction to another person for the purpose of inducing the making of a contract; and (2) the false representation is relied on by the person entering into the contract.  *Id*. at 27.01(a)(1).

Section 27.01 applies to false misrepresentations or promises made to induce another to enter into a contract for the sale of real property or stock.  *Marketic v. U.S. Bank Nat'l Ass'n*, 436 F.Supp.2d 842, 856 (N.D. Tex. 2006).  A transaction occurs when there is a sale or a contract to sell real estate or stock between the parties.  *See Nolan*, 577 S.W.2d at 556; *Burleson*, 27 S.W.3d at 611; *see also In re Skyport Global Commc'n. Inc.*, No. 10-03150, 2011 WL 111427, at 49 (Bkrtcy. S.D. Tex. Jan. 13, 2011) ("[Section 27.01] only requires that the false promise or false representation be relied upon by a party in entering a contract.  [The statutory provisions] only look at the time up to and including the execution of the contract for the fulfillment of any

9

of their elements. Thus, the point in time when the harm from such a transaction is held to occur must be the time of the effectuation of the offending contract.").

Under Section 27.01 fraud in a real estate transaction consists of a false representation made to induce another to enter into a contract and that is relied on by that person in entering that contract. TEX. BUS. & COM. CODE ANN. § 27.01(a)(1) (West 2009). The statute does not specify that an actual conveyance of real estate must occur, and as such, a contract to convey constitutes a real estate transaction under Section 27.01. *See Burleson*, 27 S.W.3d at 611; *see also Life Ins. Co. of Va. v. Murray Inv. Co*., 646 F.2d 224, 227 n.2 (5th Cir. 1981) (noting that Section 27.01 "reaches only those transactions involving the actual or potential sale or purchase of real estate . . . ."). Here, it is undisputed that the actual conveyance of real estate failed to occur. However, the evidence shows that the parties entered into a valid contract for the sale of real estate, and as a result, a potential sale or purchase of real estate was created. Because a contract for real estate was executed between the parties, Appellees' cause of action for statutory fraud under Section 27.01 is not barred due to absence of an actual conveyance of real property. *See* TEX. BUS. & COM. CODE ANN. § 27.01(a) (West 2009); *Burleson*, 27 S.W.3d at 611; *see also Life Ins. Co. of Va*, 646 F.2d at 227 n.2. Issue Two is overruled.

In Issue Three, Appellants further argue that Appellees cannot recover for statutory fraud or for the tort of negligent misrepresentation because liability cannot be based on the promises that support the real estate transaction at issue as such actions lie only in a suit for breach of contract. In support of their argument, Appellants primarily rely on *McPherson Road Baptist Church v. Mission Investors/Fort Worth*, No. 2-08-412-CV, 2009 WL 2579647 (Tex. App. – Fort Worth Aug. 20, 2009, no pet.), an unpublished opinion. In *McPherson*, the court held that a Section 27.01 claim could not be brought where there was a failure to carry through with a promise to

convey mineral rights underlying a contract to convey property. *Id*. at *7. The court explained that in order for section 27.01 to apply in a real estate transaction, the false promise must relate to something which is collateral, and it must not be the consideration of the very contract, for which a suit for breach of contract is brought. *Id*.

Appellants argue that the lease at issue was made part and parcel of the real estate contract, and as such, any failure to perform would have been for breach of contract, not statutory fraud or negligent misrepresentation. We find *McPherson* inapplicable and distinguishable because unlike the present case, *McPherson* was a breach of contract case in which the plaintiff asserted that the defendant breached its contractual promise to convey mineral rights at closing. *Id*. at *2, 7. Unlike *McPherson*, Appellees' complaint is not that Appellants breached the contract by failing to convey the lease, but rather that Appellees were induced into entering the contract by the false representations of existing facts made by Appellants regarding the lease, and as a result, suffered injury. Issue Three is overruled.

## SUFFICIENCY OF THE EVIDENCE

In Issues Four through Eight, Appellants challenge the legal and factual sufficiency of the evidence supporting various jury findings. When reviewing the legal sufficiency of the evidence, we review the evidence in the light most favorable to the challenged findings and indulge every reasonable inference that would support it. *City of Keller v. Wilson*, 168 S.W.3d 802, 823 (Tex. 2005). We credit favorable evidence if reasonable jurors could, and disregard contrary evidence unless reasonable jurors could not. *Id*. at 827. The evidence is legally sufficient if it would enable reasonable and fair-minded people to reach the verdict at issue. *Id*. The jury is the sole judge of the witnesses' credibility and the weight to be given to their testimony. *Id*. at 819. On appeal, we assume the jury resolved all conflicts in the evidence

11

and all conflicting inferences reasonably drawn from the evidence in accordance with the verdict. *Id.* at 821.

In reviewing a factual sufficiency of the evidence challenge, we consider the entire record, considering both the evidence in favor of, and contrary to, the challenged finding. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986). After considering and weighing all the evidence, we set aside the fact finding only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex. 1986). We do not substitute our own judgment for that of the trier of fact, even if we would reach a different answer on the evidence. *Maritime Overseas Corp. v. Ellis*, 971 S.W.2d 402, 407 (Tex. 1998).

## STATUTORY FRAUD CLAIM

In Issue Four, Appellants assert that there is legally and factually insufficient evidence of an actionable misrepresentation to support the claim of statutory fraud. To succeed on a Section 27.01 fraud claim a plaintiff must show that: (1) a representation of a material fact was made; (2) the representation was false; (3) the representation was made to induce a party to enter a contract; (4) the party relied upon that representation when making the contract; and (5) the false representation caused an injury. *Larsen v. Carlene Langford & Assocs., Inc.,* 41 S.W.3d 245, 249 (Tex. App. – Waco 2001, pet. denied). If a plaintiff successfully proves these elements, actual and exemplary damages can be recovered from the defendant. *Hawkins v. Walker*, 233 S.W.3d 380, 391 (Tex. App. – Fort Worth 2007, no pet.).

The misrepresentations alleged in Appellees' third amended petition for their statutory fraud claim were (1) that a 10-year commercial lease with Signature Healthcare was valid and in place for the property, (2) that the lease with Signature Healthcare would be conveyed with the

12

property and would provide certain economic benefits, (3) that Tukua had truthfully represented the conditions, rights, benefits and validity of the property and lease prior to the contract for purchase and prior to the 45-day deadline to designate property as a 1031 IRS exchange, (4) that no issues existed with Signature Healthcare other than small issues regarding compliance with the ADA, and (5) that the property would have a 10-year commercial tenant at a rental rate of $300,000 per year.

The first element of statutory fraud requires that the representation made pertain to a material fact. *Larsen*, 41 S.W.3d at 249. A material fact is one in which a reasonable person would attach importance to and would be induced to act on in determining their choice of actions. *American Medical Int'l, Inc. v. Giurintano*, 821 S.W.2d 331, 338 (Tex. App. – Houston [14th Dist.] 1991, no writ). All of the misrepresentations pointed out by Appellees relate to the lease attached to the Megan Street property. The advertisement for the Megan Street property emphasized the lease with Signature Healthcare and its scheduled income to potential buyers. At trial, Mr. Spenst testified that the couples would not have been interested in purchasing the property without a lease attached to it. Based on the record, the lease was a material fact and of importance to both parties.

Second, we consider whether the representations made were false. The first misrepresentation raised by Appellees was that a 10-year commercial lease with Signature Healthcare was valid and in place for the property. However, after having reviewed the record in its entirety, we can find no evidence that the lease agreement entered into by Tukua and Signature Healthcare was invalid or had been terminated during the time period at issue. Instead the evidence only shows that the lease was in default based on nonpayment of rent. Default of a lease does not automatically terminate the lease unless parties contract otherwise.

13

*Solar Soccer Club v. Prince of Peace Lutheran Church of Carrollton*, 234 S.W.3d 814, 827 (Tex. App. – Dallas 2007, pet. denied). Even if the parties contract for automatic termination upon default, equities could still be shown to justify a continuation if remedy of the default is possible. *W.W. Laubach Trust/The Georgetown Corp. v. The Georgetown Corp./W.W. Laubach Trust*, 80 S.W.3d 149, 157 (Tex. App. – Austin 2002, pet. denied); *T-Anchor Corp. v. Travarillo Associates*, 529 S.W.2d 622, 627 (Tex. Civ. App. – Amarillo 1975, no writ).

The lease agreement in this case did not trigger an automatic termination upon default of rental payments. The remedies section of the lease allows for termination upon default if the landlord gives the tenant written notice that they are terminating. The lease agreement also allows the landlord to terminate the tenant's right to possess the premises (evict) but, "[u]nless Landlord delivers written notice to Tenant expressly stating that it has elected to terminate this Lease, all actions taken by Landlord to dispossess or exclude Tenant from the Premises shall be deemed to be taken under this Section . . . ." One of Appellees' arguments about the validity of the lease was the fact that Tukua had served the tenant with an eviction notice in August of 2007. Under the terms of the agreement, the eviction notice by itself did not trigger a termination, and the notice given to Signature Healthcare by Tukua states, "[t]his demand to vacate is a demand for possession of the property, and not a termination of the lease." Therefore, the lease agreement at issue was valid and in place because it had not been terminated when Appellants and Appellees were negotiating and first entered into a contract for the sale of the property. *Solar Soccer Club*, 234 S.W.3d at 827.

The second misrepresentation raised by Appellees was that the lease with Signature Healthcare would be conveyed with the property and would provide certain economic benefits. There was no evidence presented at trial or in the record that Appellants were not planning to

14

convey the lease with the property. Mr. Spenst testified that the business deal was for the property and the lease together. The contract was for the real property at Megan Street, as well as the sale and conveyance of "[s]eller's interest in all leases, rents and security deposits for all or part of the Property." Appellant Romelia Mondragon testified that the sale was for the property and the attached lease and that in the contract, the sale was contingent on the commencement of lease payments.

Next, we address both the economic benefits component raised in this misrepresentation as well as in the fifth misrepresentation pointed out by Appellees. Under the second misrepresentation, the economic benefit that would have been a result of the sale was the rent to be paid during the 10-year lease term. The fifth misrepresentation alleged by Appellees was that the property would have a 10-year commercial tenant at a rental rate of $300,000 per year. Based on the terms of the lease agreement, the rental rate was $25,000 per month, or $300,000 per year. The obligations of lessors and lessees are determined by the terms of the lease and are contractual obligations when entered into. *Exxon Corp. v. Pluff*, 94 S.W.3d 22, 29 (Tex. App. – Tyler 2002, pet. denied). Because we have already concluded that the lease agreement at issue was valid and in place, this was not a false representation based on the valid lease. Here, Signature Healthcare was contractually obligated to pay the rental rates as outlined in the terms of the lease. *See id.*

We also note that an actionable false misrepresentation cannot be the promise of future rents or income, as they are generally statements of opinion rather than fact. *See Starnes v. Motsinger*, 278 S.W. 496, 498 (Tex. Civ. App. – El Paso 1925, no writ) (at the sale of a business, the factual representation of what the seller had been making per month is considered an opinion and if the buyer fails to make the same amount, the seller is not liable for fraud). *See also,*

15

*Franklin Life Ins. Co. v. Faggard*, 296 S.W.2d 335, 338 (Tex. Civ. App. – San Antonio 1956, writ ref'd n.r.e.). However, there are exceptions if the opinion is known to be false by the speaker, and the speaker has special knowledge of past or present facts that the other party does not. *Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.*, 341 S.W.3d 323, 337 (Tex. 2011); *Transport Ins. Co. v. Faircloth*, 898 S.W.2d 269, 276 (Tex. 1995); *O'Brien v. Daboval*, 388 S.W.3d 826, 840 (Tex. App. – Houston [1st Dist.] 2012, no pet.). Neither of the exceptions apply in this case. First, because the lease was valid and in place, we cannot conclude that Appellants would have known that their representations regarding the rent were false. *Cleveland Reg'l Med. Ctr., L.P. v. Celtic Properties, L.C.*, 323 S.W.3d 322, 334 (Tex. App. – Beaumont 2010, pet. denied) (when a lease meets the requirements of a lease document and both parties entered into it with the intention to be bound by it, the lease and its terms are valid and enforceable). Even though the rent was not being paid, there is evidence in the record that Tukua and Signature Healthcare were still working together to remedy the default based on the continued construction on the building and Signature Healthcare's movement of property and equipment into the building through the months of July and August of 2007. Tukua was also incentivized to remedy the default because their sale of the property to Appellants would not close until lease payments by Signature Healthcare commenced. Second, the record does not reflect that Appellants had special knowledge of past or present facts that the other party did not. *Italian Cowboy Partners, Ltd.*, 341 S.W.3d at 337. In fact, there is evidence in the record that Appellees knew that Signature Healthcare was not making rental payments.

The third and fourth misrepresentations pointed out by Appellees are that Tukua had truthfully represented the conditions, rights, benefits and validity of the property and lease prior to the contract for purchase and prior to the 45-day deadline to designate property as a 1031 IRS

16

exchange, and that no issues existed with Signature Healthcare other than small issues regarding compliance with the ADA. We consider these two misrepresentations as claims of fraud based on the failure to disclose information. As a general rule, failure to disclose does not constitute fraud unless there is a legal duty to disclose the information. *Bradford v. Vento,* 48 S.W.3d 749, 755 (Tex. 2001); *Ins. Co. of N. Am. v. Morris*, 981 S.W.2d 667, 674 (Tex. 1998). A company does not have a duty to disclose all of its financial difficulties while conducting business if it is actively working towards remedying the situation. Silence on the issue alone is not enough to constitute fraud. *Moore & Moore Drilling Co. v. White*, 345 S.W.2d 550, 555 (Tex. Civ. App. – Dallas 1961, writ ref'd n.r.e.).

In this case, Tukua did not have a duty to disclose that the lease was in default because it appears from the record to have been working towards remedying the default by trying to collect past rent, continuing the construction, and Signature Healthcare moving its furniture and equipment into the building. *Moore*, 345 S.W.2d at 555 (silence is not fraud where party is not legally bound to volunteer information).

Additionally, a seller only has a duty to disclose material facts which would not be discoverable by the exercise of ordinary care and due diligence by the purchaser, or which a reasonable investigation and inquiry would not uncover. *Smith v. Nat'l Resort Communities, Inc.*, 585 S.W.2d 655, 658 (Tex. 1979).

Mr. Banks, the broker for Appellants, made it clear to Ms. Hubbard, Appellees' broker, that he could not produce an income statement because the property was currently not producing an income. However, Mr. Banks did provide Ms. Hubbard with a copy of the lease agreement between Tukua and Signature Healthcare. Ms. Hubbard and Mr. Spenst testified that they assumed the nonpayment was because the licensing process was still ongoing, that it did not seem

17

unusual to them since the tenant had not completely moved into the building, and that they did not see a need to inquire further about the matter. Appellees also claimed that the state licensing and ADA compliance issues were presented to them as being small and solvable, only to later learn that they were significantly more numerous and problematic. However, Ms. Hubbard and Mr. Spenst testified that they assumed that the licensing and ADA issues were small and would be easily fixable and that they did not feel a need to request any further information or details on the issues.

Additionally, Mr. Zaiger visited the Megan Street property in late August of 2007 and thought that everything looked great and assumed that any ADA issues would be minor but did not inquire further or ask for specifics. When a buyer has knowledge of existing issues, but chooses not to exercise due diligence to inquire more about the details of those issues, they cannot justifiably rely on an alleged failure to disclose for purposes of claiming fraud or negligent misrepresentation. *Rich v. Olah,* 274 S.W.3d 878, 887-88 (Tex. App. – Dallas 2008, no pet.) (seller of a home not liable for fraud or negligent misrepresentation for the alleged failure to disclose the need to do further repairs where seller told the buyers that there had been foundation repairs on the house, they saw sticking doors, cracks on walls and in tiles, but did not investigate any further damage before closing on the sale). We find in the record that Appellees did not exercise due diligence by assuming that the nonpayment of rent was for a specific purpose and that the ADA issues were minor without inquiring further into the situation. *Rich*, 274 S.W.3d at 888.

Further, it does not appear that Appellees were denied access to speak directly with Signature Healthcare to inquire about the lease or any other issues Signature Healthcare would have conducting business at the facility. In fact, Mr. Banks spoke on the phone with Mr. Dawson, the owner of Signature Healthcare and its signatory on the lease, but there is no evidence about

18

what was discussed. There were also multiple delays in the signing of the sales contract and Appellees decided that they wanted "to ride it out . . . [to] get to contract," without requesting further details about any of the issues they had observed up to that point and with full knowledge of the time limitations in regards to their 1031 designations. After reviewing the record, we conclude that Tukua did not have a duty to disclose all of the details of its issues with Signature Healthcare and that Appellees had the opportunity to discover the details of Signature Healthcare's nonpayment, and the licensing and ADA compliance issues through the exercise of due diligence. *Robbins v. Capozzi*, 100 S.W.3d 18, 25 (Tex. App. – Tyler 2002, no pet.) (the purchaser of a condo had no false misrepresentation to rely on because she failed to exercise due diligence by assuming she could park her car in the garage but not attempting to do so and by not looking into the special parking accommodation given to the previous owner).

Based on the foregoing, we conclude that the alleged misrepresentations raised by Appellees fail to meet the second element of statutory fraud of being false either directly or through a failure of required disclosure. *See Robbins*, 100 S.W.3d at 26. We need not discuss the remaining three elements of statutory fraud, because the second element is not met. Appellees have failed to present legally sufficient evidence to sustain their claim of statutory fraud. *Id.* When the evidence is deemed legally insufficient, we need not address the factual sufficiency of the evidence. *Glover v. Texas Gen. Indem. Co.*, 619 S.W.2d 400, 401 (Tex. 1981). We sustain the part of Appellants' fourth issue as to the legal sufficiency of the evidence supporting the jury's finding of statutory fraud. As such, we must render judgment for the Appellants on this issue. *See AutoZone, Inc. v. Reyes*, 272 S.W.3d 588, 595 (Tex. 2008) (when evidence is legally insufficient to support a legal claim, the judgment on that claim is reversed and rendered for appellant).

19

## NEGLIGENT MISREPRESENTATION CLAIM

In Issue Four, Appellants also assert that there is legally and factually insufficient evidence of an actionable misrepresentation to support a negligent misrepresentation claim. Although Appellants failed to set out the elements of negligent misrepresentation in their briefing, it is necessary to review those in order to consider the sufficiency of the evidence claim. The four elements of negligent misrepresentation are: (1) the representation is made by a defendant in the course of his business, or in a transaction in which he has a pecuniary interest; (2) the defendant supplies "false information" for the guidance of others in their business; (3) the defendant did not exercise reasonable care or competence in obtaining or communicating the information; and (4) the plaintiff suffers pecuniary loss by justifiably relying on the representation. *Federal Land Bank Ass'n of Tyler v. Sloane,* 825 S.W.2d 439, 442 (Tex. 1991). In their negligent misrepresentation claim, Appellees raise the same claims as those raised in their statutory fraud claim, namely: (1) that a 10-year commercial lease with Signature Healthcare was valid and in place for the property, (2) that the lease with Signature Healthcare would be conveyed with the property and would provide certain economic benefits, (3) that Tukua had truthfully represented the conditions, rights, benefits and validity of the property and lease prior to the contract for purchase and prior to the 45-day deadline to designate property as a 1031 IRS exchange, (4) that no issues existed with Signature Healthcare other than small issues regarding compliance with the ADA, and (5) that the property would have a 10-year commercial tenant at a rental rate of $300,000 per year. The second element of negligent misrepresentation is that the defendant supplies "false information" for the guidance of others in their business. *Hagans v. Woodruff*, 830 S.W.2d 732, 736 (Tex. App. – Houston [14th Dist.] 1992, no writ). The alleged misrepresentations supporting Appellees' claim for negligent misrepresentation are the same

misrepresentations raised in their statutory fraud claim. As we have determined, based on our analysis set forth in the statutory fraud section above that the representations made were not false, we must also conclude that the alleged misrepresentations in support of Appellees' claim for negligent misrepresentation were not false. Accordingly, Appellees failed to meet the second element and therefore, their claim of negligent misrepresentation fails. *See id*. Because the evidence is legally insufficient to sustain negligent misrepresentation, we need not address the factual sufficiency of the evidence. *See Glover*, 619 S.W.2d at 401. Having found that the evidence was legally insufficient to sustain both the jury findings of statutory fraud and negligent misrepresentation, we render judgment for the Appellants on the entirety of its sufficiency of the evidence claim. *AutoZone, Inc.*, 272 S.W.3d at 595. Issue Four is sustained.

In light of our disposition of Appellants' fourth issue, we need not address Issues Five and Six, related to Appellees' justifiable reliance and actual damages for fraud. *See* TEX. R. APP. P. 47.1. Nor do we address Issues Seven and Eight concerning Appellees' punitive damages and the individual liability of Romelia Mondragon. *See id*.

## CONCLUSION

We reverse the trial court's judgment and render judgment that Appellees take nothing on their claims for statutory fraud and negligent misrepresentation against Appellants.

GUADALUPE RIVERA, Justice

August 14, 2013

Before McClure, C.J., Rivera, and Antcliff, JJ.
Antcliff, J., not participating

21