**Affirmed in Part as Modified, Reversed and Remanded in Part, and Memorandum Opinion filed October 27, 2020.**



In The

## Fourteenth Court of Appeals

———————

### NO. 14-18-00220-CV

———————

**MEHMET OKUMUS AND SENOL OKUMUS, Appellants**

**V.**

**GARY J. MOUTON, Appellee**

**On Appeal from the 215th District Court
Harris County, Texas
Trial Court Cause No. 2015-10370**

## MEMORANDUM OPINION

Mehmet and Senol Okumus signed a contract to sell a house to Gary J. Mouton. After two failed closings, the Okumuses evicted Mouton from the property. Mouton sued the Okumuses for breach of contract and statutory fraud, and after a bench trial, the trial court rendered judgment in favor of Mouton on his claims and awarded him damages and attorney's fees. On appeal, the Okumuses challenge the sufficiency of the evidence in support of the trial court's findings in

favor of Mouton and challenge the trial court's award of attorney's fees. We conclude the trial court's breach of contract findings are supported in part by legally and factually sufficient evidence. We modify the judgment to reflect the proper amount of actual damages for breach of contract. We reverse the award of damages for statutory fraud based on insufficient evidence and render judgment that Mouton take nothing on his fraud claim. We reverse the award of attorney's fees in light of the reduced damages award and remand for a new trial on that issue.[1]

Mouton leased the house from the Okumuses for nearly four years, at which time the parties began negotiating the sale. An initial closing date was scheduled in May 2014, but the closing did not occur because Mehmet Okumus refused to pay the closing costs. A second closing date was scheduled for August 29, 2014, but Mehmet refused to close unless Mouton agreed to pay August and September rent. The sale again fell through. The Okumuses then filed a forcible detainer action, evicted Mouton from the property, and sold the house to a third party.

### *Discussion*

In four issues, the Okumuses challenge the sufficiency of the evidence in support of the trial court's findings in favor of Mouton on his breach of contract and statutory fraud claims. In their fifth issue, they challenge the trial court's award of attorney's fees to Mouton.

### I.      Sufficiency of the Evidence in Support of Trial Court's Findings

We review a sufficiency challenge to court findings using the same standards applied in reviewing the evidence supporting jury findings. *Catalina v. Blasdel*, 881 S.W.2d 295, 297 (Tex. 1994). We first examine the legal sufficiency

---

[1] This appeal was abated for the court reporter to provide the exhibits offered and admitted at trial. The appeal was reinstated after the exhibits were filed.

of the evidence. *2900 Smith, Ltd. v. Constellation NewEnergy, Inc.*, 301 S.W.3d 741, 745 (Tex. App.—Houston [14th Dist.] 2009, no pet.). We review the evidence in the light most favorable to the challenged findings and indulge every reasonable inference that would support them. *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005). We credit favorable evidence if a reasonable factfinder could and disregard contrary evidence unless a reasonable factfinder could not. *Id.* at 827.

We sustain a legal sufficiency or "no evidence" challenge only when (1) the record discloses a complete absence of evidence of a vital fact; (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla; or (4) the evidence establishes conclusively the opposite of the vital fact. *Marathon Corp. v. Pitzner*, 106 S.W.3d 724, 727 (Tex. 2003); *Vast Constr., LLC v. CTC Contractors, LLC*, 526 S.W.3d 709, 719 (Tex. App.—Houston [14th Dist.] 2017, no pet.).

In reviewing factual sufficiency, we examine the entire record, considering both the evidence in favor of, and contrary to, the challenged findings. *Maritime Overseas Corp. v. Ellis*, 971 S.W.2d 402, 406–07 (Tex. 1998); *2900 Smith, Ltd.*, 301 S.W.3d at 746. We may set aside the verdict for factual sufficiency only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Ellis*, 971 S.W.2d at 407; *2900 Smith, Ltd.*, 301 S.W.3d at 746.

We apply these standards mindful that the factfinder is the sole judge of the credibility of the witnesses and the weight to be given to their testimony. *City of Keller*, 168 S.W.3d at 819, 822; *Summit Glob. Contractors, Inc. v. Enbridge Energy, Ltd. P'ship*, 594 S.W.3d 693, 698–99 (Tex. App.—Houston [14th Dist.] 2019, no pet.). When, as here, there is a complete reporter's record of the trial, the trial court's findings of fact will not be disturbed on appeal if there is any evidence

of probative force to support them. *Summit Glob. Contractors*, 594 S.W.3d at 699.

In an appeal from a bench trial, we review a trial court's conclusions of law de novo and will uphold them if the judgment can be sustained on any legal theory supported by the evidence. *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002); *Summit Glob. Contractors*, 594 S.W.3d at 699. We review the legal conclusions drawn from the facts to determine their correctness. *BMC Software*, 83 S.W.3d at 794; *Summit Glob. Contractors*, 594 S.W.3d at 699. Incorrect conclusions of law do not require reversal if the controlling findings of fact support the judgment under a correct legal theory. *BMC Software*, 83 S.W.3d at 794; *Summit Glob. Contractors*, 594 S.W.3d at 699.

We turn to the Okumuses' sufficiency challenges. They challenge in four issues the trial court's breach of contract, statutory fraud, and damages findings in favor of Mouton. We start with the breach of contract findings.

### A. Breach of Contract Findings Supported by Legally and Factually Sufficient Evidence

The Okumuses challenge the sufficiency of the evidence in support of the trial court's finding that they breached their contract with Mouton. The elements of breach of contract are (1) the existence of a valid contract, (2) performance or tendered performance by the plaintiff, (3) breach of the contract by the defendant, and (4) damages sustained by the plaintiff as a result of the breach. *Mays v. Pierce*, 203 S.W.3d 564, 575 (Tex. App.—Houston [14th Dist.] 2006, pet. denied). The Okumuses specifically challenge the trial court's findings that (1) they materially breached the contract by failing to close on the property and their "failure to comply with the Contract was not excused"; (2) they "obtained the benefit of the bargain they agreed to" involving improvements made to the property by Mouton; and (3) Mouton sustained damages as a result of the Okumuses' breach of

contract.[2]

**Breach**. We first address whether there is sufficient evidence of breach of contract. The Okumuses contend that the parties needed to close on or before August 15, 2014 and thus they were not required to close on the property on the scheduled closing date of August 29, 2014. We disagree.

As stated in the first contract:

> The closing of the sale will be on or before August 15TH 2014, or within 7 days after objections made under Paragraph 6D have been cured or waived, whichever date is later (Closing Date). If either party fails to close by the Closing Date, the non-defaulting party may exercise the remedies contained in Paragraph 15.[3]

Buyer's remedies specified under paragraph 15 include specific performance and "other such relief as may be provided by law, or both."

Although this contract required a closing on or before August 15, a second contract was signed by the parties with identical language except with a new closing date of "on or before" September 15, 2014.[4] Mehmet Okumus conceded during trial that under the second contract the parties "still would have had until September 15" to close. Accordingly, the Okumuses' argument that they did not have to close on the property after August 15, 2014 lacks merit.

---

[2] The benefit of the bargain finding relates to an element of damages. *See HDG, Ltd. v. Blaschke*, No. 14-18-01017-CV, 2020 WL 1809140, at *10 (Tex. App.—Houston [14th Dist.] Apr. 9, 2020, no pet.) (mem. op.) ("The normal measure of damages in a contract case is the expectancy or the benefit of the bargain measure, which seeks to restore the plaintiff to the economic position it would have occupied had the contract been performed."); *Parkway Dental Assocs., P.A. v. Ho & Huang Props., L.P.*, 391 S.W.3d 596, 607 (Tex. App.—Houston [14th Dist.] 2012, no pet.) (same).

[3] Paragraph 6D, inapplicable here, involves buyer's objections to "defects, exceptions, or encumbrances to title."

[4] The Okumuses argue that "no new contract was signed between the parties," but the second contract was signed by Mouton and both Okumuses and admitted at trial as defense Exhibit 8.

The Okumuses also argue that they did not breach the contract by failing to close on the closing date scheduled for August 29 because Mouton did not obtain financing until that date. But evidence adduced at trial showed that Mouton had obtained financing by that date, and the Okumuses failed to close on the property by September 15 as required under the contract.[5]

The Okumuses contend they were excused from performing because the contract was contingent on Mouton's obtaining financing and Mouton did not obtain financing until after August 15. *See Chalker Energy Partners III, LLC v. Le Norman Operating LLC*, 595 S.W.3d 668, 673 (Tex. 2020) ("A party seeking to recover under a contract bears the burden of proving that all conditions precedent have been satisfied."). But Mouton presented evidence that he had financing on the scheduled August 29 closing date, and the Okumuses failed to close on the property by September 15 as required under the second contract. While the Okumuses point to evidence that they did not have to close before August 15 under the first contract, the Okumuses point to no evidence excusing them from performing under second contract.

The evidence summarized above, when viewed in a light favorable to the trial court's decision, is legally sufficient evidence to support the trial court's finding that the Okumuses breached the contract. In addition, the trial court's breach finding is not so contrary to the evidence as to be clearly wrong and unjust. The evidence is thus factually sufficient. We overrule the Okumuses' issue challenging the trial court's breach of contract finding.

**Damages**. We turn to whether there is sufficient evidence of breach of

---

[5] Whether the parties were required to close on August 29 was strenuously contested at trial, but the express terms of the contract required the closing to occur by September 15. We find the Okumuses' argument that they were excused from closing on August 29 to be unpersuasive.

contract damages. The trial court awarded the following breach of contract damages: expenses for "reasonable and necessary repairs and improvements to the home" to secure financing, expenses for storage facilities after Mouton was evicted, and wiring fees for the two closings that fell through. The Okumuses contend that there is no evidence that Mouton incurred any of these expenses or that Mouton was required to make repairs to the property to obtain financing.

The goal in measuring damages for a breach of contract claim is to provide just compensation for any loss or damage actually sustained as a result of the breach. *FPL Energy, LLC v. TXU Portfolio Mgmt. Co.*, 426 S.W.3d 59, 69 (Tex. 2014); *Mays*, 203 S.W.3d at 577. The normal measure of damages in a contract case is the expectancy or the benefit of the bargain measure, which seeks to restore the plaintiff to the economic position he would have occupied had the contract been performed. *Parkway Dental Assocs., P.A. v. Ho & Huang Props., L.P.*, 391 S.W.3d 596, 607 (Tex. App.—Houston [14th Dist.] 2012, no pet.); *HDG, Ltd. v. Blaschke*, No. 14-18-01017-CV, 2020 WL 1809140, at *10 (Tex. App.—Houston [14th Dist.] Apr. 9, 2020, no pet.) (mem. op.). Another measure is the reliance measure, the purpose of which is to put the plaintiff in as good an economic position as he would have occupied had the contract not been made. *Parkway Dental Assocs.*, 391 S.W.3d at 607; *HDG*, 2020 WL 1809140, at *10.

The contract damages awarded by the trial court seem to be reliance damages meant to reimburse Mouton for expenses incurred. Specifically, the trial court found the following:

> Mouton has expended the reasonable and necessary sum of $8,905.11 for the reasonable and necessary repairs and improvements to the home in question to secure the loan . . . :
> Exhibit 5, Allegiant Pools, LLC - $6,844.19;
> Exhibit 8, Pool Boy - $460.92;

7

Exhibit 10, Vogel Construction - $1,600. . . .

Following defendants' breach, Mouton was forced to secure storage facilities for his household belongings and paid the sum of $17,447.52 (5 units x $762.00 x 24 months), which charge was reasonable in Harris County, Texas. . . .

Mouton paid $800.00 in wiring fees for the closing in May 2015 and again in August 2015. . . .

The sum of $27,152.63 (improvements + storage fees + wiring fees), if paid now in cash, would fairly and reasonably compensate Plaintiff for his damages that resulted by Defendants['] failure to comply, not including Plaintiff's reasonable fees and expenses of attorneys.

The trial court sustained objections by the Okumuses' counsel to Exhibits 5 and 8, and they were not admitted into evidence at trial. Exhibit 10 was not introduced into evidence or admitted.

Mouton testified that he paid Allegiant Pools $6,844.19 "to repair the pool to get it up as to standard to where I could purchase the house." He also testified that the bill reflected these charges and that he "had to get the pool repaired to move forward in the sale of the house." The Okumuses' counsel did not object to this testimony. The loan officer also testified that the financing was contingent on certain repairs being done, including repairs to the pool. The testimony about pool repairs amounts to some evidence of expenses incurred by Mouton for improvements to the property and the fact that financing was contingent on the pool repairs being done.

As for the storage fees, Mouton testified, "when he didn't close me it forced me into moving out, putting all my stuff in storage." He also said, "I've been incurring costs since the day I had to move out. [A]ll my belongings are in storage and been in storage since he didn't close on the house." Mouton, however, did not offer any testimony on the amount of storage fees he had paid, and no such

8

evidence came in elsewhere.

Mouton testified that he incurred costs for wiring fees "that he had to send to the title company on both of those occasions that we were going to closing," but he did not "remember what those costs were." No evidence of the amount of wiring fees came in elsewhere during trial.

We conclude that the trial court's damages finding on breach of contract is supported by legally sufficient evidence of $6,844.19 for pool repairs that were required for Mouton to obtain financing. This finding also is not so contrary to the evidence as to be clearly wrong and unjust, so it is supported by factually sufficient evidence. We thus sustain this issue in part and overrule it in part. We modify the judgment to reflect the amount supported by the evidence. *See Travelers Ins. Co. v. Wilson*, 28 S.W.3d 42, 47 (Tex. App.—Texarkana 2000, no pet.) ("A reviewing court has the power to modify the amount of recovery and reform a damages award."); *see also Siddiqui v. Fancy Bites, LLC*, 504 S.W.3d 349, 376, 379 (Tex. App.—Houston [14th Dist.] 2016, pet. denied) (modifying judgment to reflect portion of damages award supported by legally sufficient evidence).

## B. Statutory Fraud Findings Not Supported by Legally Sufficient Evidence

Mouton brought a statutory real estate fraud claim under section 27.01 of the Business and Commerce Code. *See* Tex. Bus. & Com. Code § 27.01. Section 27.01 applies to misrepresentations of material fact made to induce another to enter into a contract for the sale of land or stock. *Windsor Vill., Ltd. v. Stewart Title Ins. Co.*, No. 14-09-00721-CV, 2011 WL 11545169, at *5 (Tex. App.—Houston [14th Dist.] Mar. 17, 2011, no pet.) (mem. op.). The Okumuses contend that there is insufficient evidence of statutory fraud as a matter of law because no conveyance of property was made in this case. We agree.

9

For fraud in a real estate transaction to be actionable under section 27.01, we have held that an actual conveyance of real property must occur. *See id*. ("For fraud in a transaction to be actionable under section 27.01, the contract must actually effect the conveyance of real estate between the parties and cannot merely be tangentially related or a means for facilitating a conveyance of real estate."); *see also Evans v. Wilkins*, No. 14-00-00831-CV, 2001 WL 1340356, at *3 (Tex. App.—Houston [14th Dist.] Nov. 1, 2001, no pet.) (mem. op.) (same). An instrument effects a conveyance of real property only if it contains operative words or words of grant showing a present intent to convey title to real property. *Everett v. Arreola*, No. 04-14-00259-CV, 2015 WL 1938752, at *3 (Tex. App.—San Antonio Apr. 29, 2015, no pet.) (mem. op.). A contract for the sale of real estate does not operate as a present conveyance of title to real property. *Id*.; *see also Tukua Invs., LLC v. Spenst*, 413 S.W.3d 786, 796-97 (Tex. App.—El Paso 2013, pet. denied).

Here, the parties signed a contract for the sale of real estate, but an actual conveyance of real property never occurred. Under this court's binding precedent, section 27.01 does not apply.[6] *See Windsor Vill., Ltd.*, 2011 WL 11545169, at *5. Accordingly, the trial court's finding on statutory fraud is not supported by legally sufficient evidence. We sustain the Okumuses' sufficiency challenge as to the trial

---

[6] We recognize there is a split of authority on this issue. *See Tukua Invs.*, 413 S.W.3d at 796-97 (noting section 27.01 does not specify that an actual conveyance of real estate must occur and holding it applies to contracts to convey real estate). But our holding is consistent not only with this court's precedent but also supreme court precedent and precedent from sister courts of appeals. *See Stanfield v. O'Boyle*, 462 S.W.2d 270, 271 (Tex. 1971) (interpreting predecessor to section 27.01); *Sky Group, LLC v. Vega St. 1, LLC*, No. 05-17-00161-CV, 2018 WL 1149787, at *4 (Tex. App.—Dallas Mar. 5, 2018, no pet.) (mem. op.) (noting the requirement of a transaction involving real estate under section 27.01 had been strictly interpreted to involve contracts that "actually effect the conveyance of real estate or stock"); *Ginn v. NCI Bldg. Sys., Inc.*, 472 S.W.3d 802, 823 (Tex. App.—Houston [1st Dist.] 2015, no pet.) (same); *Burleson State Bank v. Plunkett*, 27 S.W.3d 605, 611 (Tex. App.—Waco 2000, pet. denied) (holding section 27.01 inapplicable to a construction loan transaction).

court's fraud findings.

## II.    Attorney's Fees

The Okumuses challenge the trial court's award of attorney's fees on the ground that "Mouton should not have been awarded damages by the trial court" and the attorney's fees award is predicated on the damages award. Although we hold that the damages award is supported in part by sufficient evidence, considering the value of the difference between the erroneous and correct amounts of damages awarded, we are not reasonably certain that the trial court's attorney's fees finding "was not significantly influenced by the erroneous amount of damages it considered." *See Barker v. Eckman*, 213 S.W.3d 306, 313–14 (Tex. 2006); *see also Bluelinx Corp. v. Tex. Const. Sys., Inc.*, 363 S.W.3d 623, 630–31 (Tex. App.—Houston [14th Dist.] 2011, no pet.). Accordingly, we reverse the award of attorney's fees and remand for a new trial in light of the reduction in the damages awarded. *See Barker*, 213 S.W.3d at 313–15; *see also Bluelinx Corp.*, 363 S.W.3d at 630–31.

### *Conclusion*

We modify the judgment to provide that Mouton recover actual damages of $6,844.19 from the Okumuses, jointly and severally, for their breach of contract. We affirm that portion of the judgment as modified. We reverse the judgment as to Mouton's statutory fraud claim and render a take nothing judgment on that claim. We reverse the award of attorney's fees and remand to the trial court for a new trial on attorney's fees.


/s/    Frances Bourliot
Justice

Panel consists of Justices Christopher, Jewell, and Bourliot.

11