**In re CITGO PETROLEUM CORPORATION and Stoneburner–Verrett Electric Company, Inc.**

No. 09–07–563 CV.

Court of Appeals of Texas, Beaumont.

Submitted on Nov. 28, 2007.

Decided Feb. 21, 2008.

Timothy D. McMurtrie, Royston, Rayzor, Vickery & Williams, L.L.P., Corpus Christi, Nicholas A. Parma, Royston, Rayzor, Vickery & Williams, L.L.P., San Antonio, Jessica A. Langlois, Royston, Rayzor, Vickery & Williams, L.L.P., Houston, Dana Timaeus, Timaeus & Rose, L.L.P., Beaumont, for relators.

Kurt B. Arnold, Jason A. Itkin, Caj D. Boatright, Arnold & Itkin, LLP, Houston, for real parties in interest.

Before GAULTNEY, KREGER and HORTON, JJ.

## OPINION

PER CURIAM.

This is an original proceeding seeking a writ of mandamus compelling arbitration. Rodney Rose and his wife Paula sued Citgo Petroleum Corporation and Stoneburner–Verrett Electric Company, Inc. for damages relating to an on-the-job injury that Rose alleges he sustained at a Citgo refinery in Louisiana. Citgo filed a motion to arbitrate in which Stoneburner later joined.[1] The trial court denied the motion, and relators filed a petition for writ of mandamus.

### MANDAMUS

A writ of mandamus will issue to correct a clear abuse of discretion when no

---

1. The relators in this mandamus proceeding are Citgo and Stoneburner–Verrett; the Roses are the real-parties-in-interest.

adequate remedy at law exists. *In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 753 (Tex.2001). The party seeking a writ of mandamus must bring forth a sufficient record to show the trial court's abuse of discretion. *In re Bill Heard Chevrolet, Ltd.*, 209 S.W.3d 311, 314 (Tex.App.-Houston (1st Dist.) 2006, orig. proceeding). Mandamus is proper when the trial court erroneously denies arbitration under the Federal Arbitration Act. *In re D. Wilson Constr. Co.*, 196 S.W.3d 774, 780–81 (Tex. 2006).[2]

## THE TRIAL COURT'S ORDER

Pat Tank, Inc. employed Rodney Rose. At the beginning of that employment, Rose signed a "Dispute Resolution Agreement" containing an arbitration clause. Citgo and Stoneburner argue they have the right to invoke and enforce the arbitration agreement.

■ A party who seeks to compel arbitration of a claim must (a) first establish the existence of a valid arbitration agreement and (b) show the claim falls within the agreement's scope. *In re FirstMerit Bank, N.A.*, 52 S.W.3d at 753. The trial court's determination of the agreement's validity is subject to *de novo* review. *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 227 (Tex.2003). The reviewing court's primary concern in construing a written contract is to ascertain the intention of the parties as expressed in the agreement. *Id.* at 229. If a valid agreement exists, the burden shifts to the party opposing arbitration to raise an affirmative defense. *Id.* at 227.

The trial court held a hearing on relators' motion to compel arbitration and denied the motion on three grounds: (a) no arbitration agreement exists between Citgo and plaintiffs; (b) no arbitration agreement exists between Rose and his employer Pat Tank, because Pat Tank did not sign the agreement; and (c) Citgo waived arbitration.[3]

## THE ROSE AND PAT TANK ARBITRATION AGREEMENT

The "Dispute Resolution Agreement" signed by Rose provides that the document governs the resolution of all claims and disputes "between and among Employee and Employer [Pat Tank], and Employer's customer, and clients, . . . and any other person or entity that has signed this or similar agreement or otherwise agreed to use mediation and/or arbitration to settle any claims or disputes that may arise between them." In addition, the agreement states that the "procedures set forth herein" are the sole and exclusive remedies for resolving all claims between Pat Tank and Rose, as well as all claims against Pat Tank's customers or clients or the owner of any property on which Rose performed services on Pat Tank's behalf. The agreement further provides:

Employer and Employee, by the authorized signatures below, mutually con-

---

2. *The Roses do not contest that the Federal Arbitration Act applies to this contract. The FAA preempts the party/attorney signature requirement of the Texas Arbitration Act in personal injury cases. See In re Nexion Health at Humble, Inc., 173 S.W.3d 67, 69–70 (Tex. 2005); Tex. Civ. Prac. & Rem.Code Ann. § 171.002 (Vernon 2005) (TAA is inapplicable to personal injury claims unless signed by each party and each party's attorney.).*

3. Although the order denying arbitration does not mention Stoneburner, Stoneburner joined in Citgo's motion to arbitrate and argued in favor of arbitration at the hearing. The reporter's record of the hearing demonstrates the trial court denied arbitration as to both Citgo and Stoneburner. *See generally In re Mata*, 212 S.W.3d 597, 604 (Tex.App.-Austin 2006, orig. proceeding); *In re Wheeler*, 177 S.W.3d 350, 354 (Tex.App.-Houston [1st Dist.] 2005, orig. proceeding).

tract and agree that ... all claims, disputes and/or controversies, now existing, or hereafter arising, including the arbitrability of any claim, dispute or controversy shall be exclusively resolved by the parties first trying to settle by mediation ..., failing which, the settlement of the dispute shall be by binding arbitration....

Although Rose signed the agreement, the Roses argue Pat Tank did not assent to the agreement because a Pat Tank representative did not sign it, and therefore arbitration cannot be compelled. Rose owed no duty to relators to arbitrate the dispute if a contract was not formed between Pat Tank and Rose. *See* RESTATEMENT (SECOND) OF CONTRACTS § 309 (1981) ("Defenses Against the Beneficiary"). The Roses contend the dispute resolution agreement requires that the agreement be signed and witnessed.

■■■ A party's signature on a contract is "strong evidence" that the party unconditionally assented to its terms. *In re December Nine Co., Ltd.*, 225 S.W.3d 693, 699 (Tex.App.-El Paso 2006, orig. proceeding). When a party's signature is not present, other evidence may be relied on to prove the party's unconditional assent. *In re Bunzl USA, Inc.*, 155 S.W.3d 202, 209 (Tex.App.-El Paso 2004, orig. proceeding). If one party signs a contract, the other party's acceptance may be demonstrated by its conduct, "thus making it a binding agreement on both parties." *MG Bldg. Materials, Ltd. v. Moses Lopez Custom Homes, Inc.*, 179 S.W.3d 51, 61–62 (Tex.App.-San Antonio 2005, pet. denied) (citing *Hearthshire Braeswood Plaza Ltd. P'ship v. Bill Kelly Co.*, 849 S.W.2d 380, 392 (Tex. App.-Houston [14th Dist.] 1993, writ denied)). The Federal Arbitration Act does not require that an arbitration agreement be signed, so long as the agreement is written and agreed to by the par-

ties. *In re AdvancePCS Health L.P.*, 172 S.W.3d 603, 606 (Tex.2005) (citing 9 U.S.C.A. § 3 (West 1999)).

■■■ By affidavit, Pat Tank's president, Hans Jorgensen, stated that the company's policy requires that a dispute between the company and its employees be resolved in the manner set forth in the dispute resolution agreement. He further explained that "[t]ypically, an applicant for employment is asked to read, and if they agree, sign the [dispute resolution agreement] in connection with their application for employment." Pat Tank considered the agreement "binding upon it and its employees once the employee has signed the agreement and started their employment with Pat Tank." Jorgensen acknowledged that occasionally, even though an employee has signed the agreement, Pat Tank may not have signed it. That omission, he stated, is "not an indication of Pat Tank's intent not to abide by its own dispute resolution policy." Jorgensen's affidavit explains the absence of the signature, and Pat Tank's employment of Rose demonstrates Pat Tank's acceptance of the contract. *See generally Stinson v. Am.'s Home Place, Inc.*, 108 F.Supp.2d 1278, 1283 (M.D.Ala. 2000); *see also In re Bunzl*, 155 S.W.3d at 211 n. 4.

The Roses rely on *In re Bunzl*. The *Bunzl* court concluded that the absence of Bunzl's signature, along with contract language requiring that any modification or amendment of the agreement be in writing and signed by the parties, was evidence the parties did not intend to be bound by the agreement until both parties signed it. *In re Bunzl*, 155 S.W.3d at 211. The agreement here has similar language. The issue in this case is not one of amendment, modification, or ratification, however, but whether Pat Tank assented to the contract at its inception. The evidence establishes Pat Tank's assent.

Rose relied on the validity of the agreement when offering it as an exhibit at a worker's compensation proceeding relating to his injury.[4] Having affirmatively used the "Dispute Resolution Agreement" to support a claim based on the same injury, Rose's challenge to the existence of the agreement based solely on the lack of a signature for Pat Tank is not persuasive. *See In re Weekley Homes, L.P.,* 180 S.W.3d 127, 131–32 (Tex.2005); *see generally In re Kellogg Brown & Root, Inc.,* 166 S.W.3d 732, 739 (Tex.2005) (Even a non-signatory plaintiff seeking the benefits of a contract is estopped from simultaneously attempting to avoid the contract's burdens, including the obligation to arbitrate disputes.). Rose makes no other challenge to the formation or existence of the arbitration agreement with Pat Tank.

### SCOPE OF ARBITRATION AGREEMENT

■ "Doubts regarding an agreement's scope are resolved in favor of arbitration because there is a presumption favoring agreements to arbitrate under the FAA." *In re Kellogg Brown & Root, Inc.,* 166 S.W.3d at 737. The question here is whether the parties intended to require arbitration of Rose's claims against relators and to give relators the right to enforce the agreement even though they are not signatories to the contract.

Citgo argues it has the right to compel arbitration, because the agreement references claims against "customer[s] or clients" of Pat Tank, or "the owner of any property upon which Employee has performed service[s] on behalf of Employer." Rose was employed by Pat Tank and was doing work for Pat Tank on Citgo's premises when he sustained the injury.

■ The Supreme Court has held that a third party may enforce a contract only if (a) the parties intended to secure a benefit to that third party and (b) the contracting parties entered into the contract directly for the third party's benefit. *Stine v. Stewart,* 80 S.W.3d 586, 589 (Tex. 2002) (citing *MCI Telecomms. Corp. v. Tex. Util. Elec. Co.,* 995 S.W.2d 647, 651–52 (Tex.1999)). We "will not create a third-party beneficiary contract by implication." *MCI Telecomms. Corp.,* 995 S.W.2d at 651. The agreement must clearly and fully express an intent to confer a direct benefit to the third party. *Stine,* 80 S.W.3d at 589. Incidental benefits flowing from a contract to a third party do not confer the right to enforce the contract. *South Tex. Water Auth. v. Lomas,* 223 S.W.3d 304, 306 (Tex.2007). As the Supreme Court has explained, "The common law allows parties to contract for the benefit of others—in effect, *with* others—if they do so explicitly, and when they do, the beneficiary can enforce the promisor's obligation in his favor as if he were himself a party." *Energy Serv. Co. of Bowie, Inc. v. Superior Snubbing Servs., Inc.,* 236 S.W.3d 190, 194 (Tex.2007) (citing *Stine,* 80 S.W.3d at 589; *MCI Telecomms. Corp.,* 995 S.W.2d at 651); *see also In re Palm Harbor Homes, Inc.,* 195 S.W.3d 672, 677 (Tex.2006) (The intent to benefit the third party was clear because the agreement expressly provided that it "inure[d] to the benefit of the manufacturer of the Home.").

■ "A promise in a contract creates a duty in the promisor to any intended beneficiary to perform the promise, and the intended beneficiary may enforce the duty." RESTATEMENT (SECOND) OF CONTRACTS § 304 (1981); *Superior Snubbing*

---

4. Although Rose did not expressly mention the arbitration clause at the worker's compensation hearing, he presented the dispute resolution agreement as an exhibit and, in seeking to obtain worker's compensation benefits in Texas, relied on the agreement.

*Servs.*, 236 S.W.3d at 194 n. 16. Although a third party must be more than an incidental beneficiary, a beneficiary is not required to show that the parties executed the contract solely for its benefit. *Stine*, 80 S.W.3d at 591. The focus is on whether a recognition of the right to performance in the beneficiary gives effect to the intent of the parties in entering the contract. *See* RESTATEMENT (SECOND) OF CONTRACTS § 302 (1981). Courts consider whether performance of the promise will satisfy an obligation of the promisee to pay money to the third party, or the circumstances indicate an intent to give the third party the benefit of the promised performance. *See id.; Stine*, 80 S.W.3d at 589.

■ The language in the dispute resolution agreement in this case refers to customers and clients generally, and to an owner of property where Rose worked for Pat Tank. Pat Tank and Rose agreed the document would govern the resolution of all claims and disputes "among Employee and Employer, and Employer's customer, and clients[.]" Although the contract does not name Citgo specifically, the agreement is sufficiently clear to establish that the parties intended to cover entities in this category and the record establishes Citgo is a customer or client of Pat Tank. Rose was working on Citgo's property for Pat Tank at the time of the incident involved in this claim.

■ "It is not essential to the creation of a right in an intended beneficiary that he be identified when a contract containing the promise is made." RESTATEMENT (SECOND) OF CONTRACTS § 308 (1981). Identification of an intended beneficiary is made at the time enforcement of the right is sought. *Stine*, 80 S.W.3d at 591. If the beneficiary cannot be identified when the contract is made, that may be relevant to determining whether the contract was intended to benefit the party. The burden falls on the party seeking arbitration as a third-party beneficiary to show it is one to whom the parties intended to confer the contractual rights. *See id.* at 589. "If parties to a contract agree to confer certain contractual benefits on a third party, that third party may invoke the contract's arbitration clause." *In re Rolland*, 96 S.W.3d 339, 344 (Tex.App.-Austin 2001, orig. proceeding) (citing *Hoffman v. Deloitte & Touche, L.L.P.*, 143 F.Supp.2d 995, 1004 (N.D.Ill.2001)).

The Roses rely on *In re Bayer Materialscience, LLC*, No. 01–07–00732–CV, 2007 WL 3227662, —— S.W.3d —— (Tex. App.-Houston [1st Dist.] Nov. 1, 2007, orig. proceeding). There, the First District Court of Appeals in a similar fact situation found the non-signatory company (Bayer) was not a third-party beneficiary to an at-will-employment dispute resolution agreement between the contractor Brock and its employee. *Id.* at **1–2, —— S.W.3d at ——–——. The language in the *Bayer* contract and the Pat Tank/Rose contract is similar. *Id.* at **1–3, —— S.W.3d at ——–——. The contract in that case lacked language specifically naming Bayer as a beneficiary and providing Bayer with the right to sue to enforce arbitration. *See id.* Bayer was considered merely an incidental beneficiary.

The Court in *Bayer* held as follows:

On this record, Bayer [the non-signatory company seeking arbitration] does not attempt to show that Brock [the contractor-employer] had any legal obligation to Bayer to require Brock employees to arbitrate disputes they might have with Bayer, or that including Bayer in the DRA was necessary to satisfy any legal duty. Bayer does not maintain, for example, that it required contractor employees to execute arbitration agreements as a condition of entry onto its premises, or of providing scaffolding and

painting services to it. Without more, Bayer's relationship with Brock as one of its customers is insufficient to confer the right to enforce the agreement Brock made with its employees. *Cf. In re Merrill Lynch,* 50 Tex. Sup.Ct. J. 1030 [235 S.W.3d 185] 2007 WL 2404845 at *3 (declining to enforce arbitration against non-signatory corporate affiliates, holding that '[a] corporate relationship is generally not enough to bind a nonsignatory to an arbitration agreement.'). Bayer is merely an incidental beneficiary of the DRA.

*Bayer,* 2007 WL 3227662, at *4, —— S.W.3d at ——.

Here, Citgo provided the trial court with its contract with Pat Tank, which was signed prior to the dispute resolution agreement and related to the work being performed by Rose on Citgo's premises at the time of the accident. Pat Tank's contract with Citgo set out certain duties that Pat Tank had with respect to Pat Tank's employees, including training, supervision, safety, and limitation of work areas. As to Pat Tank's employees working on Citgo's premises, as was Rose, the Citgo contract named Citgo as a "statutory employer" under Louisiana law.

In the contract, Pat Tank agreed to indemnify Citgo for damages, including arbitrator's fees, arising out of Pat Tank's employees' claims against Citgo. Pat Tank's contractual duty to indemnify Citgo suggests one reason Pat Tank would intend to give Citgo the right to enforce the arbitration agreement between Pat Tank and Rose. A claim made by a Pat Tank employee against Citgo may ultimately, though indirectly, be paid by Pat Tank under the indemnity contract.

The circumstances indicate an intent to give Citgo the benefit of Rose's promise to arbitrate. *See* RESTATEMENT (SECOND) OF CONTRACTS § 302 (1981). Recognition of a right to performance in Citgo of the arbitration promise effectuates the intent of the parties to arbitrate their claims and disputes. *See id.* We conclude Citgo is an intended third-party beneficiary of the dispute resolution agreement with Rose.

 Stoneburner maintains it is also covered by the agreement because it is a vendor under the dispute resolution agreement. The agreement defines "employer" to include Pat Tank's vendors. Stoneburner did not explain to the trial judge why the parties intended it to have third-party beneficiary status. Stoneburner presented no written contract with Pat Tank, offered no evidence of contract duties, and did not establish that it was more than an incidental beneficiary. The fact that the dispute resolution agreement includes non-signatory vendors within its sweep does not, without more, demonstrate Stoneburner's status as an intended third-party beneficiary. *See Bayer,* 2007 WL 3227662, at *4, —— S.W.3d at ——. On this record, Stoneburner has not established the trial court abused its discretion in denying Stoneburner's motion to compel arbitration.

### WAIVER

 The Roses' waiver of arbitration argument presents a question of law.[5] *In re Serv. Corp. Int'l,* 85 S.W.3d 171, 174 (Tex.2002) (quoting *In re Bruce Terminix Co.,* 988 S.W.2d 702, 703–04 (Tex.1998)); " '[T]here is a strong presumption against waiver,' and where it exists, waiver must be intentional." *In re Bank One, N.A.,* 216 S.W.3d 825, 827 (Tex.2007) (quoting *EZ Pawn Corp. v. Mancias,* 934 S.W.2d 87, 89 (Tex.1996)). Generally, delay alone

---

5. We need not address the waiver issue as it relates to Stoneburner–Verrett, because notwithstanding any waiver issue, Stoneburner did not show entitlement to arbitration.

does not establish waiver. *In re Vesta Ins. Group, Inc.*, 192 S.W.3d 759, 763 (Tex. 2006).

To establish waiver, the Roses must show that Citgo substantially invoked the judicial process to the Roses' detriment or prejudice. *See In re Bank One, N.A.*, 216 S.W.3d at 827. "Substantially invoking the judicial process can occur when the proponent of arbitration actively tried, but failed, to achieve a satisfactory result in litigation before turning to arbitration." *Williams Indus., Inc. v. Earth Dev. Sys. Corp.*, 110 S.W.3d 131, 135 (Tex. App.-Houston [1st Dist.] 2003, no pet.). If a party takes unfair advantage of discovery proceedings that would not have been available in arbitration, the conduct may constitute sufficient prejudice to infer waiver. *Structured Capital Res. Corp. v. Arctic Cold Storage, LLC*, 237 S.W.3d 890, 895 (Tex.App.-Tyler 2007, orig. proceeding) (citing *Tenneco Resins, Inc. v. Davy Int'l, AG*, 770 F.2d 416, 421 (5th Cir.1985)). A court should not ordinarily infer waiver based on prejudice if a party seeking arbitration has conducted only a minimal amount of discovery, and the party opposing arbitration has not met its burden of showing sufficient prejudice. *See In re D. Wilson Constr. Co.*, 196 S.W.3d at 783.

Citgo acknowledges it took the depositions of Rodney and Paula Rose and responded to written discovery propounded by the Roses. Citgo asserts it did not propound any written discovery to the Roses. The Roses assert Citgo subpoenaed records from medical providers, but it is not clear what information was obtained that would not be useful in an arbitration proceeding. Along with its answer, Citgo filed a motion to dismiss, arguing the case should have been filed in Louisiana. The motion, if granted, would not have disposed of the claim on the merits.

Although the Roses' attorney informed the trial court at the hearing on the arbitration motion that the Roses had "put a considerable amount of money and effort into getting this case to trial[,]" "[g]eneralized complaints about delay and expense, absent explanations and evidentiary support, will not establish prejudice." *Structured Capital Res. Corp.*, 237 S.W.3d at 896; *see also Tex. Residential Mortgage, L.P. v. Portman*, 152 S.W.3d 861, 864 (Tex.App.-Dallas 2005, no pet.) (Party urging waiver of arbitration identified no work that she had done or cost she incurred in anticipation of trial that she would not have done or incurred in anticipation of an arbitration hearing.); *Associated Glass, Ltd. v. Eye Ten Oaks Invs., Ltd.*, 147 S.W.3d 507, 514 (Tex.App.-San Antonio 2004, orig. proceeding) (Party urging waiver of arbitration did not submit any evidence to the trial court to support its claim of prejudice from "increased and 'destructive' discovery expenses" and thereby failed to show prejudice.); *Transwestern Pipeline Co. v. Horizon Oil & Gas Co.*, 809 S.W.2d 589, 592 (Tex.App.-Dallas 1991, writ dism'd w.o.j.) (Party who voluntarily incurred legal fees by initiating suit did not show prejudice.). The general statement regarding money and effort put into the case does not establish sufficient prejudice to overcome the strong presumption against waiver. *See In re Vesta Ins. Group*, 192 S.W.3d at 763. The Roses have not shown Citgo waived arbitration.

## Conclusion

Stoneburner's request for a writ of mandamus is denied. We conditionally grant Citgo's petition for a writ of mandamus and direct the trial court to enter an order granting Citgo's motion to compel arbitration. We are confident the trial court will comply. The writ will issue only if the court does not.

PETITION CONDITIONALLY GRANTED IN PART AND DENIED IN PART.