In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-12-00527-CV**
_____

**WALLACE DEBES, Appellant**

**V.**

**GENERAL STAR INDEMNITY COMPANY, Appellee**

On Appeal from the 136th District Court
Jefferson County, Texas
Trial Cause No. D-191,415-A

**MEMORANDUM OPINION**

Appellant Wallace Debes challenges the trial court's summary judgment in favor of appellee General Star Indemnity Company ("General Star"). In one issue, Debes asserts that the trial court erred in granting summary judgment in favor of General Star on Debes's breach of contract claim because genuine issues of material fact exist as to whether Debes was a third-party beneficiary of a policy issued by General Star that insured a commercial building owned by Debes. We affirm.

## I.  Factual and Procedural Background

Debes owns commercial property located at 315 I-10 North in Beaumont, Texas. In February 2004, Debes entered into a written lease with Cahoots Entertainment, Inc. ("Cahoots"), wherein Cahoots agreed to lease the property from Debes.[1]  Debes signed the lease as the landlord, and Brian O'Quinn, in his capacity as the president of Cahoots, signed the lease as the tenant.  In addition, Brian O'Quinn and his father, Jeffrey O'Quinn, each executed a personal guaranty of the lease.

With the exception of a two-week period during which the building on the property was closed for renovations, Cahoots operated "Alibi's" night club on the property continuously from June 7, 2004 until July 4, 2011.  On July 4, 2011, a fire occurred in the building on the property, causing substantial damage to the building and its contents.

Danna O'Quinn, the wife of Brian O'Quinn, purchased a commercial property insurance policy from General Star, which covered the premises when the fire occurred.  Danna is neither an officer nor director of Cahoots.  She is also not a

---

[1] The original term of the lease was for thirty-six months, commencing April 1, 2004. The lease, therefore, expired by its own terms on April 1, 2007. The record does not reflect whether Debes and Cahoots entered into a subsequent written agreement to renew the lease.  However, the evidence suggests that Cahoots continued to occupy the property until July 4, 2011, when the fire occurred.

party to or a guarantor of the lease. The policy identifies "DANNA O'QUINN DBA: ALIBI'S" as the "Named Insured." No other person or entity is identified as a named insured or additional insured in the policy or in any endorsement to the policy.

After the fire, Danna made a claim under the policy for certain losses to improvements to the building and for the loss of personal property. General Star adjusted the claim and paid Danna $429,211.93 in damages. Debes also made a claim under the policy for damages to the building from the fire and demanded payment from General Star, but General Star denied coverage on his claim.

Debes subsequently filed suit against General Star for breach of contract, alleging that General Star failed to compensate him under the policy for his property losses due to the fire. Debes also asserted breach of contract claims against Cahoots, Brian O'Quinn, Danna O'Quinn, and Jeffrey O'Quinn. General Star filed a traditional motion for summary judgment, arguing that Debes lacked standing to assert a breach of contract claim against General Star because Debes was neither an insured nor third-party beneficiary to the insurance policy. After a hearing, the trial court granted summary judgment in favor of General Star. General Star then filed an unopposed motion for severance, which the trial court granted, severing Debes's claim against General Star into a new cause and making

3

the order granting General Star's motion for summary judgment a final, appealable order. Debes timely filed a notice of appeal.

## II.    Issue Presented

In one two-part issue, Debes argues that the trial court erred in granting summary judgment in favor of General Star on his breach of contract claim because genuine issues of material fact exist as to whether Debes is an intended third-party beneficiary under the insurance contract between General Star and Danna O'Quinn, and whether Debes will become a third-party beneficiary under the insurance contract if and when he obtains a judgment on his claims against Cahoots, Brian O'Quinn, Jeffery O'Quinn, and Danna O'Quinn. In response, General Star argues that the trial court correctly granted summary judgment in its favor on Debes's breach of contract claim because Debes is neither a party nor a third-party beneficiary to the insurance contract and, thus, lacks standing to enforce the insurance contract. General Star also argues that the evidence on which Debes relies to create a fact issue as to his third-party beneficiary status is inadmissible and does not constitute competent summary judgment evidence.

## III.    Standard of Review

We review the trial court's decision to grant a motion for summary judgment de novo. *Tex. Mun. Power Agency v. Pub. Util. Comm'n of Tex.*, 253 S.W.3d 184,

4

192 (Tex. 2007). Summary judgment is proper when the movant establishes that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law. *See* Tex. R. Civ. P. 166a(c); *Am. Tobacco Co. v. Grinnell*, 951 S.W.2d 420, 425 (Tex. 1997). "[T]he question on appeal . . . is not whether the summary judgment proof raises fact issues[,] . . . but is whether the summary judgment proof establishes as a matter of law that there is no genuine issue of fact as to one or more of the essential elements of the plaintiff's cause of action." *See Gibbs v. Gen. Motors Corp.*, 450 S.W.2d 827, 828 (Tex. 1970) (emphasis omitted); *see also Gonzalez v. Mission Am. Ins. Co.*, 795 S.W.2d 734, 736 (Tex. 1990). When a defendant moves for summary judgment, it must either: (1) disprove at least one element of the plaintiff's theory of recovery, or (2) plead and conclusively prove each element of an affirmative defense. *Cathey v. Booth*, 900 S.W.2d 339, 341 (Tex. 1995).

If the movant meets its burden, the burden then shifts to the non-movant to raise a genuine issue of material fact precluding summary judgment. *Walker v. Harris*, 924 S.W.2d 375, 377 (Tex. 1996). The evidence raises a fact issue if reasonable and fair-minded jurors could differ in their conclusions in light of all of the summary judgment evidence. *See Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 755 (Tex. 2007). To determine if the non-movant has raised a fact

5

issue, "a reviewing court must examine the entire record in the light most favorable to the nonmovant, indulging every reasonable inference and resolving any doubts against the motion." *City of Keller v. Wilson*, 168 S.W.3d 802, 824 (Tex. 2005).

## IV.    Discussion

In its motion for summary judgment and on appeal, General Star argues that Debes lacks standing to assert a breach of contract claim against General Star because Debes is neither an insured nor a third-party beneficiary to the insurance policy. "In Texas, 'standing' denotes the presence of a real controversy between the parties that will actually be determined by the judicial declaration sought." *Maddox v. Vantage Energy, LLC*, 361 S.W.3d 752, 756 (Tex. App.—Fort Worth 2012, pet. denied) (citing *Austin Nursing Ctr., Inc. v. Lovato*, 171 S.W.3d 845, 849 (Tex. 2005)). Standing is a necessary component of subject matter jurisdiction, without which a court lacks authority to hear a case. *See Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 444-45 (Tex. 1993). To establish standing to assert a claim for breach of contract, a party must prove its privity to the agreement or that it is a third-party beneficiary. *Brown v. Mesa Distribs., Inc.*, 414 S.W.3d 279, 284 (Tex. App.—Houston [1st Dist.] 2013, no pet.); *Ostrovitz & Gwinn, LLC v. First Specialty Ins. Co.*, 393 S.W.3d 379, 387 (Tex. App.—Dallas 2012, no pet.).

## A.    Privity under the Insurance Policy

"[P]rivity is established by proving that the defendant was a party to an enforceable contract with either the plaintiff or a party who assigned its cause of action to the plaintiff."  *OAIC Commercial Assets, L.L.C. v. Stonegate Vill., L.P.*, 234 S.W.3d 726, 738 (Tex. App.—Dallas 2007, pet. denied) (quoting *Redmon v. Griffith*, 202 S.W.3d 225, 239 (Tex. App.—Tyler 2006, pet. denied)).    In the present case, the summary judgment evidence establishes that Debes is not a party to the insurance contract.  "Generally, a property-insurance policy is a personal contract between the insured and the insurer."  *Ostrovitz & Gwinn*, 393 S.W.3d at 388.  Here, the only "Named Insured" listed on the "Common Policy Declarations" page and the "Commercial Property Coverage Part Declarations" page is "DANNA O'QUINN DBA: ALIBI'S."  Debes is not identified in the policy or in any endorsement to the policy as a named insured or an additional insured, and Debes has not presented any argument or evidence to otherwise support a finding that he is a named or additional insured under the policy.

Further, there is no evidence that Danna assigned her breach of contract claim to Debes against General Star.  During its investigation of Danna's insurance claim, General Star examined Danna under oath. General Star attached the transcript of the examination as an exhibit to its motion for summary judgment.

7

Danna's testimony during the examination establishes that she has never entered into a contract with Debes. Absent evidence that Danna had a contract with Debes, Danna's testimony precludes a finding that she contractually assigned her contract rights under the policy to Debes. *See D Design Holdings, L.P. v. MMP Corp.*, 339 S.W.3d 195, 200-01 (Tex. App.—Dallas 2011, no pet.) ("An assignment is a contract between the assignor and assignee and operates by way of agreement or contract."). Debes has not argued or presented any evidence that he was assigned a breach of contract claim by Danna or anyone else purportedly in privity with General Star under the policy. Accordingly, we conclude that the summary judgment evidence established, as a matter of law, that Debes is not in privity with General Star under the policy.

**B.    Third-Party Beneficiary Status**

We next consider whether Debes presented evidence raising a genuine issue of material fact as to his standing as a third-party beneficiary to the policy. In Texas, a third party may enforce a contract made between other parties only if the parties to the contract intended to secure some benefit to the third party, and only if the contracting parties entered into the contract directly for the third party's benefit. *See MCI Telecomms. Corp. v. Tex. Utils. Elec. Co*., 995 S.W.2d 647, 651 (Tex. 1999). If the contract confers only an indirect, incidental benefit to the third

8

party, the third party cannot enforce the contract. *Tawes v. Barnes*, 340 S.W.3d 419, 425 (Tex. 2011).

Traditionally, Texas courts have presumed that a party contracts only for its own benefit. *Basic Capital Mgmt., Inc. v. Dynex Commercial, Inc.*, 348 S.W.3d 894, 900 (Tex. 2011); *MCI Telecomms.*, 995 S.W.2d at 651. Therefore, "[t]here is a strong presumption in Texas law against third-party beneficiary agreements," and a court "must look to the terms of the contract to determine whether the contracting parties expressly demonstrated an intent to depart from that presumption." *Ortega v. City Nat'l Bank*, 97 S.W.3d 765, 773 (Tex. App.—Corpus Christi 2003, no pet.); *see also Tawes*, 340 S.W.3d at 425 ("Traditionally, Texas courts have maintained a presumption against third-party beneficiary agreements."); *Marine Creek Partners, Ltd. v. Caldwell*, 926 S.W.2d 793, 795 (Tex. App.—Fort Worth 1996, no writ) (noting that a third party faces a "difficult burden" in establishing a contractual third-party beneficiary claim).

"'In determining whether a third party can enforce a contract, the intention of the contracting parties is controlling.'" *Basic Capital*, 348 S.W.3d at 900 (quoting *MCI Telecomms.*, 995 S.W.2d at 651). "'A court will not create a [third-party] beneficiary contract by implication.'" *Id.*; *In re Citgo Petroleum Corp.*, 248 S.W.3d 769, 775 (Tex. App.—Beaumont 2008, orig. proceeding) (per curiam).

9

The intention to contract for or confer a direct benefit to a third party must be clearly and fully spelled out in the agreement itself, or enforcement by the third party must be denied. *Basic Capital*, 348 S.W.3d at 900 (quoting *MCI Telecomms.*, 995 S.W.2d at 651). "'In other words, the party claiming third-party beneficiary status will succeed or fail according to the terms of the contract.'" *Marine Creek*, 926 S.W.2d at 795 (quoting *Brunswick Corp. v. Bush*, 829 S.W.2d 352, 354 (Tex. App.—Fort Worth 1992, no writ). "The fact that a person is directly affected by the parties' conduct, or that he may have a substantial interest in a contract's enforcement, does not make him a third-party beneficiary." *Maddox*, 361 S.W.3d at 757 (internal quotes omitted); *Rivera v. S. Green Ltd. P'ship*, 208 S.W.3d 12, 22-23 (Tex. App.—Houston [14th Dist.] 2006, pet. denied). In determining the contracting parties' intent, "[a]ll doubts must be resolved against conferring third-party beneficiary status." *Tawes*, 340 S.W.3d at 425. Therefore, "[i]f there is any reasonable doubt as to the contracting parties' intent to confer a direct benefit on the third party by way of the contract, the third-party beneficiary claim must fail." *Ortega*, 97 S.W.3d at 773.

To qualify as a third-party beneficiary, the plaintiff must show that he is either a donee or creditor beneficiary of the contract. *Stine v. Stewart*, 80 S.W.3d 586, 589 (Tex. 2002); *MCI Telecomms.*, 995 S.W.2d at 651. In the present case,

10

Debes argues that he is a creditor beneficiary to the insurance policy. A creditor beneficiary is one to whom the performance promised will come in satisfaction of a legal duty owed to him by the promisee of the agreement. *Stine*, 80 S.W.3d at 589. The legal duty owed to the third party may be an indebtedness, a contractual obligation, or other legally enforceable commitment. *Id*. "To qualify as a creditor beneficiary, the maker of the contract . . . must not only have intended to confer a benefit upon the third party . . . , but it also must have intended for the third-party to have the right to enforce the agreement." *Rivera*, 208 S.W.3d at 23 (citing *MJR Corp.*, 760 S.W.2d 4, 16 (Tex. App.—Dallas 1988, writ denied)); *see also Ortega*, 97 S.W.3d at 774. Unless both intents are clearly and fully exhibited in the four corners of contract, the third party remains no more than an incidental beneficiary to the contract. *See Rivera*, 208 S.W.3d at 23; *Ortega*, 97 S.W.3d at 774.

In determining whether General Star and Danna intended to secure a benefit to Debes by way of the insurance policy and whether they entered into the policy directly for Debes's benefit, we must examine the text of the policy. *See MCI Telecomms.*, 995 S.W.2d at 652. When interpreting a contract, we examine and consider the entire writing in an effort to harmonize and give effect to all of its provisions so that none will be rendered meaningless. *Stine*, 80 S.W.3d at 590; *MCI Telecomms.*, 995 S.W.2d at 652. "'No single provision taken alone will be

11

given controlling effect; rather, all the provisions must be considered with reference to the whole instrument.'" *Seagull Energy E & P, Inc. v. Eland Energy, Inc.*, 207 S.W.3d 342, 345 (Tex. 2006) (quoting *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983)).

Reviewing the insurance policy as a whole, as we must, we conclude that the policy does not contain any language that clearly and fully spells out an intent on behalf of General Star and Danna to confer a direct benefit on Debes. As noted, Debes is not listed as a named insured or an additional insured in the policy or in any endorsement to the policy. Debes is not identified by name anywhere in the policy, either as an insured, an owner of covered property, a loss payee, or otherwise. The policy contains no language indicating that, by entering into the insurance contract, General Star and Danna intended to secure a direct benefit for, or contracted for the primary benefit of, the owners of covered property, generally. In this respect, we note that section E.4.e of the "Building and Personal Property Coverage Form," under the heading "Loss Payment," addresses payments by General Star to "owners of lost or damaged property if other than [the named insured]." Specifically, section E.4.e states in relevant part:

> We may adjust losses with the owners of lost or damaged property if other than you. If we pay the owners, such payments will satisfy your claims against us for the owners' property. We will not pay the owners more than their financial interest in the Covered Property.

12

In *Ostrovitz & Gwinn*, the Dallas Court of Appeals examined a commercial property insurance policy to determine whether the owner of a commercial building that was damaged during a fire was a third-party beneficiary under the policy issued to the tenant of the building. 393 S.W.3d at 383, 389. The policy contained a provision identical to General Star's provision, and likewise organized under section E.4.e. *Id.* at 389. In that case, the policy identified the tenant as the named insured. *Id.* at 383, 389. The owner of the property was not listed as a named or additional insured under the policy, but was identified in an endorsement to the policy as a loss payee. *Id.* at 383. Concluding that the language of section E.4.e did not clearly and fully express an intention by the insurer and the tenant to confer a direct benefit on the owner of the property, the court explained:

> On our reading of section E.4.e, [the insurer] reserves the right—but assumes no obligation—to adjust losses with and pay an owner of covered property who is not a named insured. The provision further establishes that such payments will count towards satisfaction of any claim by the named insured. But section E.4.e does not clearly show an intent by Tenant and [the insurer] to confer a direct benefit on [the owner]. Rather, section E.4.e seems to confer a right on [the insurer] by giving [the insurer] the option of paying the owners of covered property, even if the owners are not named insureds, and providing that such payments will satisfy the named insured's claim for the owner's property.

*Id.* at 389. In concluding that section E.4.e did not support the owner's claim that it was a third-party beneficiary to the insurance contract, the court focused on the fact that the language of section E.4.e did not contractually obligate the insurer to

13

adjust losses with or pay the owner of the covered property. *Id*. at 389-90. Instead, it merely gave the insurer the right, to be exercised at the insurer's sole option, to adjust the owner's losses and pay the owner in the event of a covered loss. *Id*. at 389. Based on the policy language, the court concluded that the intent of the contracting parties in agreeing to section E.4.e was not to confer a benefit on the third-party property owner, but to reserve a right in favor of the insurer. *Id*. Accordingly, the court concluded that the insurance policy did not "clearly and fully spell out the necessary intention" by the tenant and the insurer to confer a direct benefit on the owner of the property to make the owner a third-party beneficiary of the policy. *Id*. at 392.

We agree with the reasoning in *Ostrovitz* and conclude that section E.4.e of General Star's policy does not clearly and unequivocally spell out an intention by General Star and Danna to confer a direct benefit on Debes, as an "owner[] of lost or damaged property[.]" Like the policy provision in *Ostrovitz*, section E.4.e of the policy before us does not contain language that contractually obligates General Star to adjust losses with or make a payment to an owner of lost or damaged property in the event of a covered loss. Instead, section E.4.e merely expresses an intention by the parties to confer a right on General Star by giving General Star the option of paying the owner and providing that any such payments will satisfy the

14

named insured's claim for the owner's property. We conclude, therefore, that section E.4.e does not confer third-party beneficiary status on Debes.

Further, we note that the policy contains no language that identifies any indebtedness, contractual obligation, or other legal duty owed by either Danna or General Star to Debes, and it contains no language requiring either Danna or General Star to undertake any action to discharge or protect any indebtedness, contractual obligation, or other legal duty owed to Debes. *Compare Stine*, 80 S.W.3d at 590 (concluding that plaintiff was third-party creditor beneficiary to contract where contract identified existing obligation owed to plaintiff and expressed an intent that defendant satisfy that obligation), *with Ortega*, 97 S.W.3d at 774-76 (concluding that the plaintiffs were not third-party beneficiaries when the contract failed to identify any legal obligation owed to the plaintiffs and did not require either party to the contract to undertake any action to satisfy any legal obligation owed to the plaintiffs). There is also no language in the policy that indicates that Debes may sue to enforce the policy to secure the performance of an action intended to discharge or protect a legal obligation owed to him. *See Ortega*, 97 S.W.3d at 774. Reviewing the insurance policy as a whole, we agree with General Star that the policy does not express an intention by General Star and Danna to secure a benefit to Debes, and it contains no language indicating that they

15

entered into the insurance contract with the intent to directly benefit Debes. Accordingly, at most, the policy language establishes that Debes was only an incidental beneficiary to the insurance contract.

Despite the plain language of the policy, Debes argues that genuine issues of material fact exist as to whether he is a third-party beneficiary to the policy because, he contends, the policy was purchased for the purpose of satisfying Cahoots's contractual obligation under the lease to purchase insurance coverage for the protection of Debes's interest in the leased property. Therefore, Debes argues, he is a creditor beneficiary under the policy and can enforce the policy to collect insurance proceeds for the damage to his building. We disagree.

First, in order for Debes to be a third-party creditor beneficiary to the insurance policy with standing to enforce the policy against General Star, Debes was required to identify a legal obligation owed to him by Danna under the policy, that General Star's performance under the policy was intended to satisfy. *See Stine*, 80 S.W.3d at 589 ("[A]n agreement benefits a 'creditor' beneficiary if, under the agreement, 'that performance will come to him in satisfaction of a legal duty owed to him by the promisee.'"). Debes, however, failed to identify or present evidence

16

of a legal obligation owed by Danna to Debes.[2]  Danna is neither a party nor a guarantor to the lease.  The lease, therefore, does not impose any contractual obligation, including an obligation to purchase insurance coverage, on Danna.  Further, General Star presented summary judgment evidence establishing that Danna has never entered into a contractual relationship with Debes at any time.  Debes made no effort to contradict this evidence with competent summary judgment evidence of his own.  We conclude that General Star conclusively established that Danna did not owe a legal obligation to Debes that General Star's performance under the policy was intended to satisfy.

Second, contrary to Debes's argument, the lease does not require the purchase of insurance coverage protecting Debes's interest in the leased property.  Article X of the lease, entitled "INSURANCE; FIRE & CASUALTY DAMAGE," states, in relevant part:

> **Tenant** shall maintain fire and extended coverage insurance in a minimum amount of $500,000.00 on the **PREMISES** (the "Casualty Insurance") for it's [sic] own benefit, subject to the following provisions of this paragraph.
>
> **Landlord** shall repair any damage or destruction to the **PREMISES** (but not to **Tenant's** property) caused by any peril

---

[2] Debes does not argue and has presented no evidence that Danna has personal liability under the lease by virtue of the fact that she is the wife of Brian O'Quinn, who personally guaranteed the lease.  *See* Tex. Fam. Code Ann. § 3.201 (West 2006).  Therefore, we express no opinion on the merits of such an argument.

17

covered by the Casualty Insurance, to the extent **Landlord** receives proceeds from the Casualty Insurance.

The plain language of the lease establishes that Cahoots, as "Tenant," was required to purchase fire and extended coverage insurance for Cahoots's own benefit. Although Article X requires Debes, as "Landlord," to make certain repairs to the property "to the extent **Landlord** receives proceeds from" the insurance obtained by Cahoots, nothing in Article X requires Cahoots or anyone else to obtain insurance coverage for the benefit or protection of Debes. Therefore, Debes has failed to identify a contractual obligation owed to him by anyone, including Cahoots, to purchase insurance coverage protecting his interest in the leased property.

Despite the clear language of Article X, Debes argues that the parties to the lease actually intended for Cahoots to purchase insurance coverage for the leased premises for the benefit of both Cahoots *and* Debes. This intent, he contends, is evidenced by certain statements allegedly made by Jeffrey O'Quinn to Debes during a meeting to negotiate the terms of the lease. In support of this argument, Debes relies only on the following allegations contained in paragraph 4 of his response to General Star's motion for summary judgment:

> Debes and Jeffrey O'Quinn had been business partners prior to the execution of the subject Lease. Both Debes and Jeffrey O'Quinn met at the office of Kenneth D. Furlow to discuss the terms of the Lease. Jeffrey O'Quinn wanted to pay for the fire and other casualty

18

insurance and agreed to carry at least $500,000.00 for the protection of Landlord and an additional amount to protect Tenant. Jeffrey O'Quinn wanted Cahoot's [sic] to be able to dictate the repairs to be done out of the payment of insurance, so the language was for that purpose, however, Debes is definitely a third party beneficiary under the policy.

At the end of his summary judgment response, Debes included a "Sworn Affidavit," in which Debes stated, under oath: "I am duly authorized to sign this Affidavit and have personal knowledge of the correctness and truth of the allegations in this Motion." Debes did not attach any other affidavits or evidence to his response. It is well-settled that "[a] party may not support its response to a motion for summary judgment with a document in the form of an affidavit in which the party attempts to verify the truth and correctness of all 'allegations and facts' in the response." *Olsen v. Comm'n for Lawyer Discipline*, 347 S.W.3d 876, 886 (Tex. App.—Dallas 2011, pet. denied); *see also Livingston Ford Mercury, Inc. v. Haley*, 997 S.W.2d 425, 431 (Tex. App.—Beaumont 1999, no pet.); *Keenan v. Gibraltar Sav. Ass'n*, 754 S.W.2d 392, 394 (Tex. App.—Houston [14th Dist.] 1988, no writ). "Such a document amounts to nothing more than a verified responsive pleading, which is not competent summary judgment evidence." *Olsen*, 347 S.W.3d at 886; *see also Livingston Ford*, 997 S.W.2d at 431. Rather, "[t]o effectively oppose a motion for summary judgment, the affidavit must *itself* set forth facts and show that the affiant is competent to testify to those facts." *Olsen*,

19

347 S.W.3d at 886 (internal quotes omitted); *see also Webster v. Allstate Ins. Co.*, 833 S.W.2d 747, 749 (Tex. App.—Houston [1st Dist.] 1992, no writ). Accordingly, we find that the sworn statements contained in paragraph 4 of Debes's summary judgment response do not constitute competent summary judgment evidence and are insufficient to raise a fact issue precluding summary judgment in favor of General Star.

Finally, even if the statements contained in paragraph 4 of Debes's summary judgment response constituted competent summary judgment evidence, they do not raise a genuine issue of material fact as to Debes's status as a third-party beneficiary to the insurance policy. As stated above, in order for Debes to be a third-party creditor beneficiary to the insurance policy with standing to enforce the policy against General Star, Debes was required to identify a legal obligation owed to him by Danna that General Star's performance under the policy was intended to satisfy. *See Ortega*, 97 S.W.3d at 774. The statements contained in paragraph 4 of Debes's response, however, relate only to alleged agreements made by Jeffrey O'Quinn on behalf of himself or possibly Cahoots; they do not constitute evidence of any legal obligation owed by Danna to Debes. In other words, even if we assume that Jeffrey O'Quinn did orally agree during the lease negotiations to purchase at least $500,000 in fire and other casualty insurance for the protection of

20

Debes and to purchase additional insurance for the protection of Cahoots, as Debes argues, such an agreement does not impose any sort of contractual obligation on Danna that General Star's performance under the insurance policy was intended to satisfy. Therefore, the statements contained in paragraph 4 of Debes's summary judgment response do not raise a fact issue as to whether Debes was a third-party beneficiary to the insurance policy. We overrule the first part of Debes's sole issue on appeal.

Debes also argues that he will become a third-party creditor beneficiary to the insurance contract if and when he obtains a judgment on his claims against Cahoots, Jeffrey O'Quinn, Brian O'Quinn, and Danna O'Quinn. Therefore, Debes contends, the trial court erred in granting summary judgment in favor of General Star when the issue of the other defendants' liability to Debes remains unresolved. Debes relies heavily on *P.G. Bell Co. v. U.S. Fid. & Guar. Co.*, 853 S.W.2d 187 (Tex. App.—Corpus Christi 1993, no writ), in support of this argument.

In *P.G. Bell*, a contractor entered into a contract with a subcontractor for the subcontractor to erect precast concrete slabs in connection with a construction project. *Id.* at 188. As part of the contract, the subcontractor agreed to present the contractor with certificates of insurance proving it had comprehensive general liability coverage. *Id.* In accordance with the terms of the contract, the

subcontractor presented the contractor with proof of a comprehensive general liability insurance policy. *Id.* The policy covered all sums the subcontractor would become legally obligated to pay for damage to covered property of the contractor and provided that the insurer of the policy had a right and duty to defend any suit filed against the subcontractor related to property covered by the policy. *Id.* After the subcontractor cracked one of the slabs during the construction project and refused to pay for the damages, the contractor filed suit against the subcontractor and subsequently took a default judgment against it. *Id.* After the issuer of the policy refused to pay the judgment awarded the contractor, the contractor filed suit against the issuer of the policy, alleging claims for breach of contract, breach of the duty of good faith and fair dealing, violations of the Deceptive Trade Practices Act, and to recover the amount of the default judgment taken against the subcontractor. *Id.* The insurer filed a motion for summary judgment, asserting, *inter alia*, that the contractor could not bring a breach of contract claim against the insurer because it was not a party to the insurance policy. *Id.* at 188-89. The trial court granted summary judgment in favor of the insurer. *Id.* at 189.

On appeal, the contractor argued that the trial court erred in granting summary judgment on its breach of contract claim against the insurer because the contractor was a judgment creditor of the subcontractor and, under the terms of the

policy, was entitled to enforce the policy against the insurer to recover the amount of the default judgment up to policy limits. *Id*. at 189. The court reversed and remanded the trial court's order granting summary judgment in favor of the insurer. *Id*. at 193. The court explained:

> This court recently held that an entity becomes a [third-party] beneficiary to an insurance contract when it obtains a judgment against the insured; at that time, the entity becomes a [third-party] judgment creditor. [Third-party] judgment creditors are bound by the rights, duties, and obligations of the insured under the terms and conditions of the contract between the insurance company and the insured.

*Id*. at 189 (citations omitted). The court then pointed to the following language of the policy, which expressly provided that a third party who has secured a judgment against the insured could enforce the policy against the insurer to recover the amount of the judgment under the policy to the extent of the policy limits:

> **5. Action Against Company** No action shall lie against the Company unless . . . the amount of the **Insured's** obligation to pay shall have been fully determined . . . by judgment against the **Insured** after actual trial . . . . Any person or organization or the legal representative thereof who has secured such judgment or written agreement shall thereafter be entitled to recover under this policy to the extent of the insurance afforded by this policy.

*Id*. at 190 (emphasis in original). Relying on this policy language, the court concluded that the contractor became a third-party beneficiary to the insurer's liability policy when it obtained the default judgment against the subcontractor and that the contractor had standing to assert a breach of contract cause of action

23

against the insurer to recover the amount of the default judgment up to the policy limits. *Id.* at 189-90.

We find *P.G. Bell* to be distinguishable from the present case. The insurance policy in *P.G. Bell* was a third-party liability policy. Third-party insurance "requires the insurer to perform its duty to indemnify not directly to the insured[,] but directly, on the insured's behalf, to a third-party claimant injured by the insured's conduct." *Hartman v. St. Paul Fire & Marine Ins. Co.*, 55 F. Supp. 2d 600, 603 (N.D. Tex. 1998) (applying Texas law) (citing 1 ERIC MILLS HOLMES & MARK S. RHODES, APPLEMAN ON INSURANCE 2D § 3.3 (1st ed.1996)) ("Liability insurance is customarily described and classified as third-party insurance because the liability insurer's duty to pay runs not directly to the insured but directly (on the insured's behalf) to a third-party claimant who is injured by the insured's conduct."). The intent of the parties to a third-party liability contract is to indemnify, and if the third-party obtains a judgment, the policy confers a direct benefit to a third-party claimant injured by the insured. As such, a third-party claimant who has obtained a judgment against the insured for a covered loss under the third-party liability policy has been held to be a third-party beneficiary to the liability policy. *See P.G. Bell*, 853 S.W.2d at 189; *Filley v. Ohio Cas. Ins. Co.*, 805 S.W.2d 844, 847 (Tex. App.—Corpus Christi 1991, writ denied).

24

By contrast, the insurance policy in the present case is a first-party property coverage policy. The purpose of first-party insurance is to "'reimburse[] the insured for losses that he incurs as a result of injury to himself or damage to property that he owns or leases.'" *Am. Nat'l Fire Ins. Co. v. Hammer Trucking, Inc.*, No. 2-04-327-CV, 2006 WL 3247906, at \*2 n.16 (Tex. App.—Fort Worth Nov. 9, 2006, pet. denied) (mem. op.) (quoting 1 BARRY R. OSTRAGER & THOMAS R. NEWMAN, HANDBOOK ON INSURANCE COVERAGE DISPUTES § 12.12(a) (12th ed. 2004)). "'The classic example of first-party insurance is property insurance.'" *Hartman*, 55 F. Supp. 2d at 603 (quoting HOLMES & RHODES, APPLEMAN ON INSURANCE 2D § 3.2). Unlike third-party liability policies, first-party "[p]roperty insurance policies are 'intended solely to indemnify the insured for his actual monetary loss by the occurrence of the disaster[.]'" *Highlands Ins. Co. v. City of Galveston ex. rel. Bd. of Trustees of Galveston Wharves*, 721 S.W.2d 469, 471 (Tex. App.—Houston [14th Dist.] 1986, writ ref'd n.r.e.) (quoting 4 J. APPLEMAN, INSURANCE LAW & PRACTICE § 2107 (rev. 1969)). Because the policy in the present case is a first-party policy, the purpose of which is to indemnify the insured, Danna O'Quinn, for her own direct losses, we find the rule established in *P.G. Bell* to be inapplicable to the present case.

25

Further, unlike the policy in *P.G. Bell*, the insurance policy in the present case does not contain any language that provides a third party who has secured a judgment against an insured for a covered loss with a right to enforce the policy against the insurer to recover the amount of the judgment up to the policy limits. Such contract language was central to the court's holding in *P.G. Bell* that the contractor was a third-party beneficiary to the policy. *See P.G. Bell*, 853 S.W.2d at 190; *see also Basic Capital*, 348 S.W.3d at 900 (concluding that a contract confers third-party beneficiary status if "[t]he intention to contract or confer a direct benefit to a third party must be clearly and fully spelled out or enforcement by the third party must be denied."). Accordingly, the absence of similar policy language expressly providing Debes with a right to recover under the policy also renders the *P.G. Bell* case inapplicable to the present case. We overrule the second part of Debes's sole issue on appeal.

General Star has established as a matter of law that Debes was not in contractual privity with General Star and was not a third-party beneficiary to the insurance policy. Debes, therefore, lacked standing to bring a claim against General Star for breach of the insurance contract. We conclude that the trial court properly granted summary judgment in favor of General Star on Debes's breach of contract claim. We affirm the trial court's order.

26

AFFIRMED.

_____
CHARLES KREGER
Justice

Submitted on July 1, 2013
Opinion Delivered July 10, 2014

Before McKeithen, C.J., Kreger and Horton, JJ.