**Affirmed and Memorandum Opinion filed March 8, 2022.**



In The

# Fourteenth Court of Appeals

## NO. 14-20-00797-CV

## SAMUEL AGUOCHA, Appellant

## V.

## NEWREZ LLC F/K/A NEW PENN FINANCIAL, LLC D/B/A SHELLPOINT MORTGAGE SERVICING, Appellee

**On Appeal from the 151st District Court
Harris County, Texas
Trial Court Cause No. 2015-30304**

## MEMORANDUM OPINION

A borrower sued his lender, seeking to stop a foreclosure and to recover damages on other causes of action. The lender moved for summary judgment, and the trial court granted the lender's motion. The borrower now appeals that ruling, arguing in two issues that the summary judgment was improper, and that a new trial should have been granted. For the reasons given below, we overrule the borrower's issues and affirm the trial court's judgment.

# BACKGROUND

The borrower in this case is Samuel Aguocha, who executed a note in 2004 after refinancing his home mortgage loan. The note was secured by a deed of trust, which was made for the benefit of the lender and all of its successors and assigns. The current assignee of the deed of trust is The Bank of New York Mellon, and the current servicer of the loan is Newrez LLC f/k/a New Penn Financial, LLC d/b/a Shellpoint Mortgage Servicing. For ease of reference, we identify these entities and all of their predecessors as the "Bank."

Aguocha defaulted on his loan when he missed his monthly installment payment in January 2009. In October 2011, the Bank sent Aguocha a Repayment Plan Agreement, which included terms that would allow Aguocha to repay the delinquent amounts he owed under the loan. The terms required six monthly payments between October 2011 and March 2012, all of which were of equal size, followed next by a seventh lump sum payment in April 2012 that was much larger. Aguocha made the first six payments, but not the seventh lump sum payment.

After other attempts to cure Aguocha's delinquency had failed, the Bank sent Aguocha a notice of acceleration and notice that his home would be sold at a foreclosure sale. Aguocha filed suit in state court to stop the foreclosure. In addition to seeking a permanent injunction, Aguocha asserted claims for breach of contract, violations of the DTPA, violations of both federal and state debt collection laws, and third-party beneficiary of contract. Because of the federal claim, the Bank removed the case to federal court, but once there, Aguocha amended his petition to omit the federal claim.[1] Aguocha then moved the federal court to remand the case back to the state court, and the federal court granted that motion.

---

[1] Aguocha's amended petition was not included in our clerk's record, but the Bank appended a copy to its brief and requested that we take judicial notice of it. Because Aguocha has

2

Back in state court, the Bank moved for summary judgment on traditional grounds. Aguocha filed a response, but the trial court granted the Bank's motion. Aguocha then moved for a new trial, but the trial court denied that motion, and this appeal followed.

## THE BANK'S MOTION FOR SUMMARY JUDGMENT

Aguocha begins by challenging the trial court's ruling on the Bank's motion for summary judgment. He addresses the trial court's ruling with respect to each of his claims, with a primary focus on his contract claim. We address all of the claims in turn.

## I.    Breach of Contract

Aguocha based his contract claim on the Repayment Plan Agreement. According to Aguocha, the Bank made a promise under that agreement that it would modify the terms of Aguocha's home mortgage loan if Aguocha made the six initial monthly payments (regardless of whether Aguocha also made the seventh lump sum payment). Aguocha alleged that he made the six initial payments and that the Bank breached the agreement by not modifying the loan as promised.

The Bank argued in its motion for summary judgment that Aguocha's entire claim was based on a false premise. According to the Bank, the Repayment Plan Agreement did not actually obligate the Bank to modify Aguocha's home mortgage loan. Instead, the agreement obligated Aguocha to make six monthly payments followed by the seventh lump sum payment. The Bank further argued that any modification depended on Aguocha making all seven payments—not just the first six—and that Aguocha had to meet other qualification requirements before a

_____

not disputed the accuracy of that copy, we grant the Bank's request. *See Hsin-Chi-Su v. Vantage Drilling Co.*, 474 S.W.3d 284, 293 n.5 (Tex. App.—Houston [14th Dist.] 2015, pet. denied) (taking judicial notice of documents filed in federal court).

3

modification could be made. Because Aguocha never made the lump sum payment, the Bank reasoned that it could not have breached the agreement by refusing to modify the terms of the loan.

The trial court agreed with the Bank's argument, and our review of that decision is de novo. *See Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005).

With a traditional summary judgment, the movant has the initial burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *See* Tex. R. App. P. 166a(c). The movant here was the Bank, and it sought a summary judgment on the theory that it had negated the essential element of breach, which, if proven, is an appropriate basis for a traditional summary judgment. *See Henkel v. Norman*, 441 S.W.3d 249, 251 (Tex. 2014) (per curiam) ("A traditional summary judgment is properly granted where a defendant conclusively negates at least one essential element of a cause of action.").

As proof that it did not breach the Repayment Plan Agreement, the Bank produced several items of evidence, beginning with a copy of the agreement. As the Bank indicated in its motion, no provision in that agreement obligated the Bank to make a modification of Aguocha's home mortgage loan. In fact, the only reference to a "modification" appeared in the following provision (underline added):

> **Repayment of Past Due Amount:** The attached schedule ("Schedule") shows the total amount (the "Past Due Amount") you must pay to [the Bank] in order to cure your delinquency, as of Oct. 6, 2011. The Past Due Amount includes your delinquent payments, accrued late charges, and fees and costs accrued by [the Bank] as a result of your default or any bankruptcy filing. You have agreed that you will repay the Past Due Amount over a several month period by making the installment payments shown on the Schedule. Please take note that the Schedule of payments is broken down into several smaller installment payments and one large final payment. The final payment may often be referred to as

4

a final "lump sum." This final lump sum payment shall be due upon completion of the plan. It is your responsibility to contact the Lender no less than Ten (10) days prior to the date the final lump sum payment is due to make arrangements to pay this sum. If you qualify for a loan modification, upon approval of our investor and submission by you of the required documents, this lump sum may be incorporated into a modification of your loan. If you do not pay the final lump sum by the date it is due and/or fail to contact the Lender within Ten (10) days prior to such due date to make arrangements to pay this sum, you will be considered in breach of this Agreement.

These terms plainly obligated to Aguocha to make all seven payments, not just the first six.

In addition to this evidence, the Bank produced the affidavit testimony of one of its representatives. This representative testified that Aguocha made the six smaller payments listed on the schedule, but not the larger lump sum payment.

Altogether, this evidence conclusively established that the breaching party was Aguocha, and that the Bank had no obligation under the agreement to modify Aguocha's home mortgage loan. We therefore conclude that the Bank satisfied its initial burden of negating an essential element of Aguocha's claim.

Because the Bank satisfied its burden as the summary-judgment movant, the burden then shifted to Aguocha to raise a fact issue on the element of breach. *See Katy Venture, Ltd. v. Cremona Bistro Corp.*, 469 S.W.3d 160, 163 (Tex. 2015) (per curiam). When deciding whether Aguocha raised a fact issue, we consider all of the evidence and make every reasonable inference in Aguocha's favor, because he was the nonmovant. *Id.*

Aguocha makes two arguments in his appellant's brief, and the first is that he fully performed under the agreement. In support of that argument, Aguocha relies on an excerpt from his deposition, which we reproduce here:

A. You didn't read it completely.

Q. Okay. What did I leave out?

A. Unless it is not there, it states that the number of payments that should be made is six.

Q. Correct. It refers to a schedule, and the schedule has six payments to be made, followed by a large seventh payment?

A. No. There is never a time it says seven. It says six.

Q. Okay. Can you show me where it says six, please?

A. If you look, October, November, December, January, February, March. Those are the required payments.

Q. So why is the seventh payment of April 1st, 2012, why is that not a required payment?

A. The—that amount you are looking at there is the amount that triggers the modification; however, prior to the modification, you must have demonstrated that you can make those six payments.

This deposition testimony does not establish that Aguocha fully performed under the agreement, or that the Bank failed to perform. As we just demonstrated above, the agreement expressly required Aguocha to make seven payments, not six: "If you do not pay the final lump sum . . . you will be considered in breach of this Agreement." Aguocha implicitly recognized that requirement in his deposition when he said that the seventh lump sum payment "triggers the modification." Had he made that lump sum payment, the Bank might have agreed to modify Aguocha's home mortgage loan, assuming that Aguocha satisfied the Bank's other qualification requirements. But because Aguocha produced no evidence that he made the lump sum payment, the Bank acted within its rights by not modifying the loan, which means that Aguocha failed to raise a fact issue that the Bank had breached the agreement.

Aguocha argues next in his brief that he raised a fact issue on breach because the Bank acted by "sending then reneging on the modification agreement." Aguocha

6

cites to no evidence in support of this argument. Accordingly, we overrule that argument as inadequately briefed. *See* Tex. R. App. P. 38.1(i).

Because the Bank satisfied its burden as the summary-judgment movant, and because Aguocha failed to raise a fact issue, we conclude that the trial court correctly granted the Bank a summary judgment on Aguocha's claim for breach of contract.

## II. DTPA

Aguocha alleged in his petition that the Bank made certain misrepresentations, which were actionable under the DTPA.

In its motion for summary judgment, the Bank sought to negate an essential element of Aguocha's DTPA claim, just as it had done with the claim for breach of contract. More specifically, the Bank argued that Aguocha was not a consumer under the DTPA because his claim did not arise out of any transaction where goods or services were sought or acquired.

Consumer status is an essential element in a DTPA claim. *See Doe v. Boys Club of Greater Dallas, Inc.*, 907 S.W.2d 472, 478 (Tex. 1995). To qualify for that status, Aguocha must have sought or acquired either "goods" or "services." *See* Tex. Bus. & Com. Code § 17.45(4). For purposes of the DTPA, "goods" is defined as "tangible chattels or real property," and "services" is defined as "work, labor, or service purchased or leased for use." *See* Tex. Bus. & Com. Code § 17.45(1)–(2). Money is neither a good nor a service under these definitions, which means that a lending transaction in which a borrower only seeks to refinance a loan cannot give rise to a DTPA claim. *See, e.g.*, *Riverside Nat'l Bank v. Lewis*, 603 S.W.2d 169, 174–75 (Tex. 1980) (concluding that a person who sought to refinance a car loan was not a consumer); *Murphy v. Wells Fargo Bank, N.A.*, 455 S.W.3d 621, 631 (Tex. App.—Houston [14th Dist.] 2013) ("Because appellants were seeking a loan to

refinance their home mortgage and not the purchase of a new home, we conclude that, like Lewis, they are not consumers under the DTPA."), *rev'd on other grounds*, 458 S.W.3d 912 (Tex. 2015).

The Bank produced evidence that Aguocha did not seek or acquire any goods or services. This evidence included the original warranty deed, which shows that Aguocha first acquired his home in 2002; a note and deed of trust from 2004, which is when Aguocha refinanced his home mortgage loan; and other documents following his default in 2009, after which he sought to avoid a foreclosure by renegotiating his loan. This evidence conclusively established that Aguocha engaged in a pure lending transaction, and that he was not a consumer for purposes of the DTPA. The Bank accordingly satisfied its burden of negating an essential element of Aguocha's claim, which means that the burden shifted to Aguocha to raise a fact issue.

Aguocha did not argue in his brief that his claim arose out of a transaction in which he sought or acquired something other than money. Nor did he cite any evidence to that effect. Instead, Aguocha merely asserted in his brief that "there is very little difference in the status of a consumer attempting to keep his or her house in a financial crisis and the initial purchase of a home using financing." For this assertion, Aguocha relied solely on *Tukua Investments, LLC v. Spenst*, 413 S.W.3d 786 (Tex. App.—El Paso 2013, pet. denied), but that case has no application here because it did not involve a claim under the DTPA.

We conclude that Aguocha failed to raise a fact issue, and that the trial court correctly granted summary judgment in favor of the Bank on Aguocha's DTPA claim.

8

## III. Debt Collection

Aguocha based his debt-collection claim on an allegation that the Bank had submitted false and misleading billing information, in violation of Section 392.304(a)(8) of the Texas Finance Code.

The Bank argued that it was entitled to summary judgment on this claim because it had not misrepresented Aguocha's debt, among other reasons.

Aguocha has not specifically challenged on appeal whether the Bank satisfied its burden as the summary-judgment movant. Aguocha has merely argued in his brief that there were sufficient fact issues to submit his claim to a jury. His argument is conclusory, however. Aguocha has not explained or identified the fact issues, nor has he cited to any evidence from his summary-judgment response showing that the Bank had misrepresented his debt. We overrule this argument as inadequately briefed. *See* Tex. R. App. P. 38.1(i).

## IV. Third-Party Beneficiary

Aguocha alleged that he was the third-party beneficiary of a contract between the Bank and the federal government under the Home Affordable Modification Program ("HAMP"). He also alleged that he was entitled to damages because the Bank breached that contract.

The Bank argued that it was entitled to summary judgment on this claim because Aguocha was not a third-party beneficiary, and because there is no private right of action under HAMP.

Aguocha has not challenged on appeal whether the Bank's motion was legally sufficient. Nor has Aguocha argued that he somehow raised a fact issue. Instead, the only point he makes in his brief is that, in *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547 (7th Cir. 2012), a federal court of appeals "distinguish[ed] those litigants

9

claiming third-party beneficiary status to those . . . whose claims emanated from the performance of the modification." Aguocha has not explained how that distinction is meaningful here. Nor has he addressed the federal court's recognition in that case that homeowners are not third-party beneficiaries in this context, and that HAMP affords no private right of action, which is exactly what the Bank argued in its motion for summary judgment. *Id.* at 559 n.4. Once more, we overrule Aguocha's argument as inadequately briefed. *See* Tex. R. App. P. 38.1(i).

For the foregoing reasons, we conclude that Aguocha has not shown that the trial court's summary judgment was improper as to any of his claims.

## AGUOCHA'S MOTION FOR NEW TRIAL

We review a trial court's denial of a motion for new trial (or motion to reconsider a summary judgment) for an abuse of discretion. *See Bridgestone Lakes Cmty. Improvement Ass'n, Inc. v. Bridgestone Lakes Dev. Co.*, 489 S.W.3d 118, 124 (Tex. App.—Houston [14th Dist.] 2016, pet. denied). To establish that the trial court abused its discretion, Aguocha had the burden of showing that the trial court's decision was arbitrary or unreasonable, or that the trial court acted without reference to any guiding rules or principles. *Id.* Aguocha argues in his brief that he satisfied this burden for three reasons. We examine each of those reasons separately.

For the first reason, Aguocha argues in a single sentence that he was entitled to a new trial because he established that the Bank "attempt[ed] to collect an unmodified loan." Aguocha does not expound on that argument in any way, which means that we can overrule it as inadequately briefed. *See* Tex. R. App. P. 38.1(i).[2]

---

[2] The outcome would be the same even if we were to consider the argument in Aguocha's written motion to the trial court, which is much longer than the argument in his brief. Aguocha argued in his motion that he raised a fact issue as to whether he had performed and the Bank had breached. But Aguocha did not cite to any new evidence, and without such evidence, we could not say that the trial court abused its discretion. *See Se. Tex. Envtl., L.L.C. v. Wells Fargo Bank,*

10

For the second reason, Aguocha argues that a new trial should have been granted because the trial court had not resolved the Bank's counterclaim for foreclosure. Aguocha presented this argument in his written motion, but during the hearing on that motion, the Bank represented that it had no such counterclaim. The Bank represented instead that it had sought a nonjudicial foreclosure. Aguocha has not cited to any pleading showing otherwise, and we are aware of none. On this record, Aguocha has not demonstrated that the trial court abused its discretion.[3]

For his third and final reason, Aguocha argues that he was entitled to a new trial because he established that the Bank "breached the express terms of their modification agreement by misinforming him that new paperwork would be forthcoming and then asserting that he had abandoned the effort to modify." Aguocha did not raise this argument in his motion for new trial, which means that he waived it for purposes of appeal. *See* Tex. R. App. P. 33.1.

**CONCLUSION**

The trial court's judgment is affirmed.

---

*N.A.,* No. 01–10–00076–CV, 2011 WL 3556966, at *2 (Tex. App.—Houston [1st Dist.] Aug. 11, 2011, no pet.) (mem. op.) ("When a trial court denies a motion for rehearing, or reconsideration, it does not abuse its discretion if the party seeking rehearing cites no additional evidence beyond that available to him when the first summary judgment was granted." (internal quotations omitted)).

[3] To whatever extent that Aguocha argues that the trial court's judgment is interlocutory, rather than final, that argument must fail because the judgment contains the following finality phrase: "This order disposes of all claims against all parties and is, and is intended to be, a final judgment for all purposes, including appeal." Under binding precedent, that finality phrase means that the judgment is final for purposes of appeal, even if the parties and the trial court had intended for the judgment to be interlocutory. *See Lehmann v. Har-Con Corp.*, 39 S.W.3d 191, 206 (Tex. 2001).

11

/s/    Tracy Christopher
Chief Justice


Panel consists of Chief Justice Christopher and Justices Zimmerer and Wilson.